FILED
United States Court of Appeals
Tenth Circuit

**March 10, 2008**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

MIGUEL RODRIGUEZ-ENRIQUEZ,

        Defendant - Appellant.

No. 07-2033

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CR-05-2358 JB)**

---

Angela Arellanes, Albuquerque, New Mexico, for Defendant - Appellant.

William J. Pflugrath, Assistant United States Attorney, (Larry Gómez, Acting United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.

---

Before **HARTZ**, **McWILLIAMS**, and **HOLMES**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

      This appeal concerns whether a conviction for assault two (drugging a victim) under Colorado law is a crime of violence under United States Sentencing Guidelines § 2L1.2(b)(1)(A)(ii). We hold that it is not. As we understand the

meaning of *physical* force, the elements of the offense do not require the use, attempted use, or threatened use of physical force. We therefore reverse the district court's sentence and remand for resentencing.

## I. BACKGROUND

Miguel Rodriguez-Enriquez pleaded guilty in the United States District Court for the District of New Mexico to one count of illegal reentry of a deported alien previously convicted of an aggravated felony. *See* 8 U.S.C. § 1326(a)(1), (a)(2), (b)(2). Under the Guidelines the base offense level for illegal reentry is 8. *See* USSG § 2L1.2(a). Mr. Rodriguez-Enriquez received a 16-level enhancement under USSG § 2L1.2(b)(1)(A)(ii) after the district court ruled, over his objection, that he had previously been convicted of a crime of violence. The prior conviction was for assault two (drugging a victim) in Colorado. *See* Colo. Rev. Stat. Ann. § 18-3-203(1)(e) (2001). Mr. Rodriguez-Enriquez's offense level was adjusted downward three levels to 21, because he accepted responsibility for his crime. *See* USSG § 3E1.1.

Mr. Rodriguez-Enriquez did not challenge his criminal-history score of 10, which placed him in criminal-history category V. *See* USSG § 4A1.1; *id.* at § 5A. His Guidelines sentencing range was 70 to 87 months' imprisonment. *See* USSG § 5A. He was sentenced to 70 months' imprisonment and 2 years' unsupervised release. On appeal he renews his argument that assault two (drugging a victim) is not a crime of violence.

## II.    ANALYSIS

We review de novo the district court's determination that a conviction is for a crime of violence.  *See United States v. Perez-Vargas*, 414 F.3d 1282, 1284 (10th Cir. 2005).  Under the Guidelines a defendant convicted of illegal reentry receives a 16-level enhancement if he was previously deported after being convicted of a crime of violence.  *See* USSG § 2L1.2(b)(1)(A)(ii).  The application note to § 2L1.2 defines *crime of violence* to include:

> murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

*Id*. cmt. n.1(B)(iii).  Mr. Rodriguez-Enriquez was not convicted of any of the enumerated offenses.  Therefore, his prior offense was a crime of violence only if it had "as an element the use, attempted use, or threatened use of physical force against the person of another."  *Id*.

Because the Guidelines refer to the *elements* of the offense, we ordinarily "'look[] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.'"  *Perez-Vargas*, 414 F.3d at 1284, (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)).  Colorado law sets forth several alternative means of committing assault in the second degree.  *See* Colo. Rev. Stat. Ann. § 18-3-203(1)(b), (c), (d), (e), (f), (f.5), (g).  A person

commits the offense of assault two (drugging a victim) if "[f]or a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness, or other physical or mental impairment or injury to another person by administering to him, without his consent, a drug, substance, or preparation capable of producing the intended harm." *Id*. § 18-3-203(1)(e). The question before us is whether nonconsensual administration of a drug should be characterized as "the use of physical force."

The government contends that the question has been largely answered for us by a Colorado state court. *State v. Allaire*, 843 P.2d 38, 40 (Colo. Ct. App. 1992), held that Colo. Rev. Stat. Ann. § 18-3-203(1)(e) is a crime of "force or violence." The court defined *force* as, among other things, "constraint or compulsion," and reasoned that drugging a victim involved force because "[i]t is an application of force, although by chemical rather than mechanical means." *Id.* The court, however, was not interpreting the federal sentencing guidelines, but rather Colorado's own sentencing statutes. Moreover, the issue was whether the crime involved the application of *force*, not *physical force*. Thus, the decision is hardly binding on our interpretation of USSG § 2L1.2(b)(1)(A)(ii).

Even if we were to agree that drugging involves the use of *force*, we must still decide what is added by the adjective *physical*. It might relate to the consequences of the force, as in the term *deadly force*, which describes force that can cause death; or it might relate to how the force is generated. The published

appellate opinions stating that poisoning involves the use of physical force appear to have selected the first alternative. They focus on the consequences of poisoning and find these consequences every bit as damaging as the consequences of being beaten or shot. For example, a Fifth Circuit panel in *United States v. Calderon-Pena*, 357 F.3d 518, 520 (5th Cir. 2004), which concerned whether a conviction for child endangerment was a crime of violence under USSG § 2L1.2, wrote: "Where there is a bodily injury, there is some sort of accompanying use of force—whether obviously, through use of an automobile as a weapon (as in this case), or through more subtle means, such as, for example, poison, or even subjecting a victim to disease." Similarly, a Second Circuit panel in *Vargas-Sarmiento v. United States Dep't of Justice*, 448 F.3d 159, 174–75 (2d. Cir. 2006), addressing the meaning of "use of physical force" in 18 U.S.C. § 16(b), wrote:

> [W]hen the perpetrator poisons food that she intends her spouse to eat, she engages in no mere passive act or reckless omission. Rather, she intentionally avails herself of the physical force exerted by poison on a human body deliberately to kill her husband. First, she affirmatively exercises "power" over the contents of her husband's food to transform it into an agent of forcible destruction. Then she avails herself of that force to asphyxiate her husband (or otherwise destroy his vital bodily functions). That the wife may not herself administer the poison, that she may employ deceit to prompt her spouse's unwitting ingestion, and that she may not be present when the poison forcibly kills do not alter the § 16(b) conclusion. The fact remains that she

-5-

deliberately set in motion a chain of events specifically intended to use the force of poison to kill her husband.

And a Ninth Circuit panel, deciding whether a threat to poison with anthrax was a threat to use physical force (under 18 U.S.C. § 16(a)), said the following in *United States v. De La Fuente*, 353 F.3d 766, 771 (9th Cir. 2003):

Anthrax is a physical substance that causes injury to the human body. . . . The injury and pain caused by anthrax infection may not always be immediately obvious to the person exposed, but the bacteria's physical effect on the body is no less violently forceful than the effect of a kick or blow.

We disagree with this view of the meaning of *physical* in this context, as have other panels in the same circuits that produced these opinions. In the Fifth Circuit, the panel opinion in *Calderon-Pena* (which, in any case, did not specifically address the meaning of *physical*) was reversed by the en banc court, which said nothing about poison. *See United States v. Calderon-Pena*, 383 F.3d 254, 260–61 (5th Cir. 2004) (en banc). And in two other published opinions the Fifth Circuit has stated that poisoning or drugging does not constitute the use of physical force. *See United States v. Velasco*, 465 F.3d 633, 639 n.6 (5th Cir. 2006) ("For example, use of a poison . . . does not require the use of physical force"); *United States v. Villegas-Hernandez*, 468 F.3d 874, 879 (5th Cir. 2006) ("making available to the victim a poisoned drink while reassuring him the drink is safe," does not involve the use of physical force). Like views are expressed in *Chrzanoski v. Ashcroft*, 327 F.3d 188, 195 (2d. Cir. 2003) (under 18 U.S.C.

§ 16(a) "placement of a tranquilizer in the victim's drink" is not use of physical force), and *United States v. Beltran-Munguia*, 489 F.3d 1042, 1046 (9th Cir. 2007) (under USSG § 2L1.2(b)(1)(A)(ii), adding drug to victim's drink is not use of force).

We reject the view that the word *physical* relates to the effect of the force, because if the word has that meaning, it adds nothing to the Guidelines definition of crime of violence. We hesitate to interpret a Guidelines provision so as to render a word superfluous. *See United States v. Bunner*, 134 F.3d 1000, 1006 n.5 (10th Cir. 1998). The pertinent phrase in the Guidelines definition is "use of physical force against the person of another." USSG § 2L1.2 cmt. n.1(B)(iii). In this context the word *person* refers to the body. *See* Black's Law Dictionary 1178 (8th ed. 2004) (providing as one definition of *person*: "the living body of a human being"). "Force against the person of another" connotes force against a physical object. A "force" can affect a physical object only by having a *physical* effect on the object. One cannot distinguish a "physical force against the person of another" from a "[generic] force against the person of another" by looking to the consequences of the force. Tellingly, none of the above-cited cases stating that poisoning involves the use of physical force makes an effort to define *non*physical force against the person of another.

Thus, the adjective *physical* must refer to the mechanism by which the force is imparted to the "person of another." One possibility is that the adjective

-7-

*physical* before the word *force* is being used to distinguish the described force from a force generated by emotion, psychology, religion, or rhetoric (as in "force of argument"). But that seems highly unlikely. Again, the relevant language is "use of physical force against the person of another." USSG § 2L1.2 cmt. n.1(B)(iii). Rhetorical force and the like are used on the *mind* of another, not the *body*. The locution "use of emotional force against the person of another" is so peculiar that we are confident that the word *physical* was not included as a modifier of *force* for the purpose of eliminating from consideration crimes committed through the use of religious arguments or similar persuasion.

In what circumstances, then, are we likely to think of the force as being generated by *physical* means? When someone is struck by a fist, a bat, or a projectile, we have no difficulty in characterizing the force against the person as physical. In those instances the force on the victim is generated mechanically. Kinetic energy from the fist, bat, or projectile is transferred to the body of the victim. Although the matter is far from certain, the absence of colorable alternative meanings for *physical* suggests that it is the presence of this mechanical impact that defines when force is physical. In contrast, the effect of poison on the body is achieved by chemical action, not by mechanical impact.

Our precedents have not directly addressed the issue before us. But *Perez-Vargas*, 414 F.3d at 1286–87, is instructive. In that case we held that third-degree assault under Colorado law does not constitute a crime of violence under

-8-

USSG § 2L1.2. The definition of the offense states in pertinent part: "A person commits the crime of assault in the third degree if the person knowingly or recklessly causes bodily injury to another person or with criminal negligence the person causes bodily injury to another person by means of a deadly weapon." Colo. Rev. Stat. Ann. § 18-3-204. We observed, "[W]hile it is likely most third degree assaults will involve the use or threatened use of physical force, . . . the language of the statute allows for other possibilities." *Perez-Vargas*, 414 F.3d at 1286. We noted three such possibilities: "recklessly shooting a gun in the air to celebrate, intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." *Id.*

Because the conclusion in *Perez-Vargas*—namely, that a third-degree assault could be committed without the use, attempted use, or threatened use of physical force—required only one such example of third-degree assault, it was unnecessary for us to provide three. We might therefore label as dictum the assertion that any one particular offense did not involve the use of physical force. But it was necessary to have at least one example of such an offense, and all three stand on equal footing. Accordingly, we view the inclusion of each of the three as an alternative holding. Each example is entitled to respect.

The example in *Perez-Vargas* most pertinent to the case before us is "intentionally exposing someone to hazardous chemicals." *Id.* As suggested by the defendant in that case, we look to "the means by which the injury occurs (the

use of physical force),” not “the result of defendant's conduct, i.e., bodily injury.” *Id.* at 1285 (emphasis omitted). Apparently focusing on the means employed, we decided that intentionally exposing someone to hazardous chemicals does not constitute the use of physical force. We should not read too much into the examples recited by *Perez-Vargas*. After all, the opinion provided no specific explanation why each of the three examples did not constitute the use of physical force. Nevertheless, we think that the hazardous-chemical example captures the point that we have made above: injury effected by chemical action on the body (as in poisoning or exposure to hazardous chemicals) should not be described as caused by *physical force*.

Turning to the statute at issue in this case, Colo. Rev. Stat. Ann. § 18-3-203(1)(e), it criminalizes harm caused by the nonconsensual administration of “a drug, substance, or preparation.” The harm is caused by chemical action on the victim's body. Although there is no doubt that one could use physical force to drug someone, as by forcing a drink down the victim's throat, drugging by surreptitious means does not involve the use of physical force. Therefore, we hold that assault two (drugging a victim) is not a crime of violence under § 2L1.2(b)(1)(A)(ii).

Finally, we note the limited impact of our holding in this case. The error in this case was only in computing the Guidelines sentencing range. But that range does not necessarily determine a defendant's sentence. A sentencing judge may,

-10-

for proper reasons, depart from the Guidelines range; and under *Gall v. United States*, 128 S.Ct. 586 (2007), the judge has discretion to vary from that range. In exercising that discretion the judge is not bound by what may seem to be an artificial distinction between shooting a victim and poisoning him.

## III. CONCLUSION

We REVERSE the district court's sentence and REMAND for resentencing. Judge McWilliams dissents.