**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSEPH TYRELL DEVRIES,

    Defendant - Appellant.

No. 16-8113
(D.C. No. 2:16-CR-00015-ABJ-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.
_____

Joseph Devries appeals his sentence, arguing that his Wyoming conviction for threatening to use a drawn deadly weapon does not qualify as a crime of violence under U.S.S.G. § 4B1.1. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm his sentence.

**I**

Devries pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). A Presentence Investigation Report ("PSR") recommended that Devries' 2014 conviction in Wyoming state court for threatening to use a drawn deadly weapon be treated as a crime of violence under U.S.S.G. § 4B1.2. Combined

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

with a prior controlled substance conviction, Devries was subject to a base offense level of 24. With a total offense level of 25 and a criminal history category of VI, Devries' advisory Guidelines range was 110-120 months. The district court adopted the PSR and imposed a sentence of 110 months. Devries timely appealed.

## II

We review de novo whether a state crime qualifies as a "crime of violence" under § 4B1.2. United States v. Rooks, 556 F.3d 1145, 1146-47 (10th Cir. 2009). A crime of violence includes any offense punishable by a term of imprisonment of more than one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). In conducting our analysis, we apply the modified categorical approach to "determine which alternative element in a divisible statute formed the basis of the defendant's conviction." United States v. Titties, 852 F.3d 1257, 1266 (10th Cir. 2017) (quotation omitted).[1] "With the elements (not the facts) identified, courts can then do what the categorical approach demands and compare those elements to the [Guidelines] definition." Id. (quotation omitted). Courts "must focus on the minimum conduct criminalized by the state statute without applying legal imagination to consider hypothetical situations that technically violate the law but

---

[1] There appears to be no dispute that the statute at issue is divisible; both parties confine their analyses to the particular subsection under which Devries was convicted. See id. (noting that a divisible statute "sets out one or more elements of the offense in the alternative" (quotation omitted)).

2

have no realistic probability of falling within its application." Id. at 1274 (quotations omitted).

Devries was convicted under a subsection of Wyoming's aggravated assault and battery statute that applies to any individual who "[t]hreatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another." Wyo. Stat. § 6-2-502(a)(iii). A "deadly weapon" is "a firearm, explosive or incendiary material, motorized vehicle, an animal or other device, instrument, material or substance, which in the manner it is used or is intended to be used is reasonably capable of producing death or serious bodily injury." Wyo. Stat. § 6-1-104(a)(iv).

Because the term "deadly weapon" includes animals and substances, Devries argues that the statute could be violated by a defendant who threatens to poison a victim while holding a vial of poison, or who warns he will release bees or poisonous snakes. He relies on United States v. Rodriguez-Enriquez, 518 F.3d 1191 (10th Cir. 2008), a case in which we held that a Colorado conviction for "drugging a victim" does not constitute a crime of violence. Id. at 1191. We concluded that the Guidelines' use of the modifier "physical" in physical force "must refer to the mechanism by which the force is imparted to the person of another." Id. at 1194 (quotation omitted). "[I]t is the presence of [a] mechanical impact that defines when force is physical. In contrast, the effect of poison on the body is achieved by chemical action, not by mechanical impact." Id. Accordingly, "injury effected by chemical action on the body (as in poisoning or exposure to hazardous chemicals)

3

should not be described as caused by physical force." Id. at 1195; see also United States v. Perez-Vargas, 414 F.3d 1282, 1286 (10th Cir. 2005) (stating that "intentionally exposing someone to hazardous chemicals" would not constitute the use of physical force).[2]

However, we limited the application of this rule in Armijo. In that case we considered a Colorado felony menacing statute that applied when an individual placed another in "fear of imminent serious bodily injury" through the use or threatened use of a "deadly weapon." Armijo, 651 F.3d at 1230 (quoting Colo. Rev. Stat. § 18-3-206). Like the Wyoming statute at issue in this case, the term "deadly weapon" was defined to include a "material[] or substance." Id. (quoting Colo. Rev. Stat. § 18-1-901(e)). Relying on Rodriguez-Enriquez, the defendant argued that because the offense could be committed by poisoning, it did not qualify as a crime of violence. We held that "Rodriguez-Enriquez stands for the limited proposition that a Colorado provision criminalizing the surreptitious drugging of a victim does not involve the use of physical force." Id. at 1233. Even in light of that rule, we held that the Colorado offense qualified as a crime of violence "despite the inclusion of poisons and pathogens in Colorado's definition of deadly weapon." Id. at 1231-32.

We conclude the Wyoming offense at issue is closer to that considered in Armijo than in Rodriguez-Enriquez. The Wyoming statute requires that a weapon be

---

[2] These cases considered whether an offense qualified as a "crime of violence" under U.S.S.G. § 2L1.2 rather than § 4B1.2. But the two provisions contain identical elements clauses, and we have construed them in the same fashion. See United States v. Armijo, 651 F.3d 1226, 1233 n.4 (10th Cir. 2011).

4

"drawn," which the Wyoming Supreme Court has interpreted to mean "in a position for use when [defendant] made the threat." Ewing v. State, 157 P.3d 943, 947 (Wyo. 2007). Although we are not directed to Wyoming case law directly on point, it would seem that a defendant who threatens a victim with poison or venom would have to threaten to force it on the victim rather than surreptitiously apply it. And we ruled in Armijo that unlike surreptitious poisoning, a threat to "force the poison on the victim" is sufficient to qualify as a threat of physical force. 651 F.3d at 1232 (quotation omitted).

Devries notes that the Wyoming statute lacks an explicit imminence element, and thus one could threaten to surreptitiously poison a victim at a later date while holding a vial. But the requirement that a defendant threaten to use a deadly weapon that is "in a position for use," Ewing, 157 P.3d at 947, strongly suggests that the defendant must threaten to use it at the time it is drawn. We thus think that the scenarios proposed by Devries are "hypothetical situations that technically violate the law but have no realistic probability of falling within its application." Titties, 852 F.3d at 1274 (quotations omitted).

## III

**AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

5