**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 7, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TITO ONTIVEROS,

    Defendant - Appellant.

No. 16-1362

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:11-CR-00214-PAB-1)**
_____

Grant R. Smith, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant-Appellant.

J. Bishop Grewell, Assistant United States Attorney (Emily M. May, Assistant United States Attorney, and Robert C. Troyer, Acting United States Attorney, on the brief), Denver, Colorado, for Plaintiff-Appellee.
_____

Before **KELLY**, **HOLMES**, and **BACHARACH**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

Defendant-Appellant, Tito Ontiveros, appeals from the district court judgment

resentencing him following the vacation of his original sentence as a result of the

Supreme Court's decision in <u>Johnson v United States</u> ("<u>Johnson II</u>"), 135 S. Ct. 2551 (2015). Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

Background

Mr. Ontiveros was convicted by a jury of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and possessing an unregistered firearm, 26 U.S.C. § 5861(d). After finding that Mr. Ontiveros qualified as an armed career criminal under the Armed Career Criminal Act (ACCA) for having committed three prior violent felonies, one of which fell under the "residual clause," the district court sentenced Mr. Ontiveros to 382 months' imprisonment. 1 R. 340. The sentence was affirmed on direct appeal. <u>United States v. Ontiveros</u>, 550 F. App'x 624 (10th Cir. 2013).

In 2015, the Supreme Court held that the ACCA's residual clause is unconstitutionally vague. <u>Johnson II</u>, 135 S. Ct. at 2563. Mr. Ontiveros filed a 28 U.S.C. § 2255 motion to vacate his prior sentence. 1 R. 327–31. The district court vacated his sentence, and scheduled him for resentencing. 1 R. 340–41.

At resentencing, the new presentence report (PSR) recommended a base offense level of 22 under § 2K2.1(a)(3) of the Sentencing Guidelines because Mr. Ontiveros had one prior felony conviction that counted as a crime of violence. 2 R. 122. The government objected, arguing that the base offense level should be 26 under § 2K2.1(a)(1) because Mr. Ontiveros had two prior crimes of violence. 1 R. 347–48. It argued that Mr. Ontiveros's 2007 conviction for Colorado second-degree

2

assault, in violation of Colo. Rev. Stat. § 18-3-203(1)(g), also counted as a crime of violence. 1 R. at 349. Mr. Ontiveros conceded that one of his prior convictions constituted a crime of violence but argued, relying on our decision in United States v. Perez-Vargas, 414 F.3d 1282 (10th Cir. 2005), that his Colorado second-degree assault conviction did not. 1 R. 379–84. The government countered that the Supreme Court's decision in United States v. Castleman, 134 S. Ct. 1405 (2014), controlled the case.

The district court agreed with the government and, based on the higher offense level, sentenced Mr. Ontiveros to two concurrent 110-month sentences with a three-year term of supervised release. Mr. Ontiveros now appeals, arguing that Colorado second-degree assault is not a "crime of violence."

Discussion

We review de novo whether a prior conviction is a "crime of violence" under U.S.S.G. § 4B1.1(a). United States v. Williams, 559 F.3d 1143, 1146 (10th Cir. 2009).[1] Section 2K2.1(a)(1) of the guidelines indicates a base level of 26 for a firearm conviction "subsequent to sustaining at least two felony convictions of . . . crime[s] of violence." U.S.S.G. § 2K2.1(a)(1). The guidelines define a "crime of violence" as any federal or state offense "punishable by imprisonment for a term

---

[1] "'Crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." Commentary to U.S.S.G. § 2K2.1 (Definitions).

3

exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another . . . ." Id. § 4B1.2(a)(1).

To determine whether a prior conviction qualifies as a crime of violence, we apply the categorical approach if the criminal statute under which the defendant was charged contains only one set of elements. Descamps v. United States, 133 S. Ct. 2276, 2281–82 (2013). A person commits second-degree assault in Colorado if "[w]ith intent to cause bodily injury to another person, he or she causes serious bodily injury to that person or another." Colo. Rev. Stat. § 18-3-203(1)(g) (2016). Given only one set of elements, we therefore apply the categorical approach. Thus, we consider only the statutory definition, not the underlying facts of conviction. Descamps, 135 S. Ct. at 2283. Our inquiry is confined to whether Colorado second-degree assault statute "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). "The meaning of 'physical force' . . . is a question of federal law," while state law provides the elements of the crime of conviction. Johnson v. United States (Johnson I), 559 U.S. 133, 138 (2010).

On appeal, Mr. Ontiveros contends that Colorado second-degree assault does not require the "use . . . of physical force," so our analysis is twofold. First "we must identify the minimum 'force' required by Colorado law for the crime of [second-degree assault]," and second "determine if that force categorically fits the definition of physical force." United States v. Harris, 844 F.3d 1260, 1264 (10th Cir. 2017). When construing the minimum culpable conduct required for a conviction, "such conduct only includes that in

4

which there is a 'realistic probability, not a theoretical possibility' the state statute would apply." Id. State supreme court decisions provide the best indication of a "'realistic probability,' supplemented by decisions from the intermediate-appellate courts." Id.

A. Colorado Second-Degree Assault Requires Physical Force

Mr. Ontiveros first argues that because the elements of Colorado second-degree assault focus on the result of the conduct (serious bodily injury), not the conduct itself, the offense does not necessarily require a showing of physical force. He relies upon our decisions in United States v. Perez-Vargas, 414 F.3d 1282 (10th Cir. 2005), and United States v. Rodriguez–Enriquez, 518 F.3d 1191 (10th Cir. 2008). We have previously questioned Perez-Vargas and Rodriguez-Enriquez, see United States v. Hammons, 862 F.3d 1052, 1056 n.5 (10th Cir. 2017), but we now hold that Perez-Vargas's logic on this point is no longer good law in light of Castleman.

In Perez-Vargas, we considered whether Colorado third-degree assault qualified as a crime of violence under the guidelines. We held that it did not because Colorado third-degree assault focuses on the result (bodily injury) and not the means of inflicting injury. Perez-Vargas, 414 F.3d at 1285. As we explained,

> [W]hile it is likely most third[-]degree assaults will involve the use or threatened use of physical force, thus qualifying the crime as a violent one under the [g]uidelines, the language of the statute allows for other possibilities. Indeed, at oral argument, Perez-Vargas's counsel provided several examples of third[-]degree assault that would not use or threaten the use of physical force: recklessly shooting a gun in the air to celebrate, intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals. One can imagine a number of other hypotheticals.

5

Id. at 1286. We held that "Colorado's third[-]degree assault statute does not necessarily include the use or threatened use of 'physical force' as required by the [g]uidelines." Id. at 1287. We adhered to Perez-Vargas in Rodriguez-Enriquez, when we "reject[ed] the view that the word physical relates to the effect of the force." 518 F.3d at 1194. We held that "the adjective physical must refer to the mechanism by which the force is imparted." Id.

The government argues, and we agree, that Perez-Vargas and Rodriguez-Enriquez relied on reasoning that is no longer viable in light of Castleman. In Castleman, the defendant was charged with being in possession of a firearm after being convicted of a misdemeanor crime of domestic violence. Castleman, 134 S. Ct. at 1408. During sentencing, the district court found that his prior conviction under Tennessee law for "having 'intentionally or knowingly cause[d] bodily injury to' the mother of his child" did not constitute a misdemeanor crime of domestic violence as used in 18 U.S.C. § 922(g)(9) because it did not have "as an element, the use . . . of physical force." Id. at 1409. The Supreme Court disagreed and found that "knowing or intentional causation of bodily injury necessarily involves the use of physical force." Id. at 1414 (emphasis added). The Court specifically rejected the contention that "one can cause bodily injury without the use of physical force—for example, by deceiving [the victim] into drinking a poisoned beverage, without making contact of any kind." Id. (internal quotation marks omitted). In so doing, it rejected our logic in Perez:

6

[U]se of force . . . is not the act of sprinkling the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under [petitioner's] logic, after all, one could say that pulling the trigger on a gun is not a use of force because it is the bullet, not the trigger, that actually strikes the victim.

Id. at 1415 (internal quotation marks and brackets omitted). It concluded that "[i]t is impossible to cause bodily injury without applying force in the common-law sense." Id. (emphasis added).

Mr. Ontiveros argues that Castleman's logic is inapplicable because it concerned common-law battery in the context of a misdemeanor crime of violence. He distinguishes Perez-Vargas as involving "physical force" in the violent felony context, something that the Court in Castleman specifically refused to address. Id. at 1413.

Almost every circuit that has looked at this issue has determined that Castleman's logic is applicable to the "physical force" requirement as used in a felony crime of violence. See United States v. Hill, 832 F.3d 135, 143 (2d Cir. 2016) (applying Castleman to 18 U.S.C. § 924(c)(3)(A)); United States v. Chapman, 866 F.3d 129, 133 (3d Cir. 2017) (applying Castleman to USSG § 4B1.2); United States v. Reid, 861 F.3d 523, 529 (4th Cir. 2017) (applying Castleman to USC § 924(e)(1)); United States v. Jennings, 860 F.3d 450, 458–60 (7th Cir. 2017) (same); United States v. Rice, 813 F.3d 704, 705–06 (8th Cir.) (applying Castleman to USSG § 4B1.2), cert. denied, 137 S. Ct. 59 (2016); Arellano Hernandez v. Lynch, 831 F.3d 1127, 1131 (9th Cir. 2016) (implicitly applying reasoning of Castleman to 18 U.S.C.

7

§ 16(a)), cert. denied sub nom. Hernandez v. Sessions, 137 S. Ct. 2180 (2017);

United States v. Haldemann, 664 F. App'x 820, 822 (11th Cir. 2016) (unpublished)

(applying Castleman to USSG § 4B1.2). But see United States v. Rico-Mejia, 859

F.3d 318, 322–23 (5th Cir. 2017) (rejecting government's argument that Castleman's

logic concerning direct and indirect application of force extends to felony crimes of

violence).[2]

    As the Fourth Circuit explained in Reid:

> To be sure, Castleman did not construe ACCA's force clause, and it expressly reserved the question of whether the causation of "bodily injury," a term defined broadly under Tennessee law, would "necessitate violent force under Johnson's definition of that phrase" in ACCA.  134 S. Ct. at 1414.  But the Court's formal reservation does not foreclose application of the relevant aspects of its reasoning, which did not rest on any distinction between § 922(g)(9) and ACCA's force clause, § 924(e)(2)(B)(i).  Indeed, the Court relied significantly on Johnson in rejecting a proffered limitation on the term "physical force."  See Castleman, 134 S. Ct. at 1414 ("[A]s we explained in Johnson, 'physical force' is simply 'force exerted by and though concrete bodies'"); cf. id. at 1416–17 (Scalia, J., concurring in part and concurring in the judgment) ("[I]t is impossible to cause bodily injury without using force 'capable of' producing that result").  Accordingly, by applying the combination of Johnson and Castleman, we conclude that ACCA's phrase "use of physical force" includes force applied directly or indirectly.

---

[2] Mr. Ontiveros's citations to the First and Sixth Circuits as contrary authority are unavailing. The First Circuit has yet to rule on this issue, United States v. Edwards, 857 F.3d 420, 426 n.11 (1st Cir. 2017), cert. denied, No. 17-5688, 2017 WL 3613361 (U.S. Oct. 2, 2017).  The Sixth Circuit merely stated that Castleman's holding concerned whether simple battery constitutes physical force in the misdemeanor crime of violence context. See United States v. Glover, 681 F. App'x 432, 434 (6th Cir. 2017), cert. denied, No. 17-5537, 2017 WL 3480464 (U.S. Oct. 2, 2017).  While the amount of physical force needed for a misdemeanor crime of violence may be less than that needed in the violent felony context, the nature of the physical force applies in both contexts.

Reid, 861 F.3d at 528–29. We agree with the Fourth Circuit and hold that Castleman's logic applies to "physical force" in the context of violent felonies. To the extent that Perez-Vargas holds that indirect force is not an application of "physical force," that holding is no longer good law.

Mr. Ontiveros next argues that even if Castleman applies, Colorado second-degree assault requires no "use . . . of physical force" because one can be convicted for a failure to act. Mr. Ontiveros relies principally on People v. Madison, 176 P.3d 793 (Colo. App. 2007), which affirmed a second-degree assault conviction of a son for neglecting to care for his father. Id. at 798–99. We are not persuaded.

In Castleman, the Court was concerned with the common-law crime of battery which can be committed "by simply omission to act where there is a duty to act." 2 W. LaFave, Substantive Criminal Law § 16.2(b) (2d ed. 2003) (treatise favorably cited by the Court at 134 S. Ct. at 1414–15). Despite this, the Court held that "[i]t is impossible to cause bodily injury without applying force in the common-law sense." Castleman, 134 S. Ct. at 1415 (emphasis added).[3] If it is impossible to commit a battery without applying force, and a battery can be committed by an omission to act, then second-degree assault must also require physical force.

---

[3] Although Castleman applied the modified categorical approach, the analysis does not change because the element of conviction in that case was "intentionally or knowingly caus[ing] bodily injury to" another, the same as in the current case. See Castleman, 134 S. Ct. at 1414.

9

B. Colorado Second-Degree Assault Requires "Violent Force"

The final part of our analysis is whether the minimum physical force required for a conviction under Colorado second-degree assault is "violent force." Johnson I, 559 U.S. at 140. Johnson I determined that in the context of a crime of violence,[4] "the phrase 'physical force' means violent force — that is, force capable of causing physical pain or injury to another person." Id. Mere offensive touching, such as in common-law battery, does not suffice as "violent force." Id. at 139–40. Colorado second-degree assault requires intentional causation of serious bodily harm, easily meeting the standard for "violent force."[5] See id. at 140.

Although the government also argues that Colorado second-degree assault is an enumerated offense under the career-offender enhancement, it is unnecessary to consider this argument because we affirm on the grounds stated above.

AFFIRMED.

---

[4] When determining whether an offense is a crime of violence under § 4B1.2(a)(1), the court may apply cases analyzing a violent felony under the ACCA. United States v. Wray, 776 F.3d 1182, 1184–85 (10th Cir. 2015).

[5] Mr. Ontiveros's reliance on United v. Mason, No. 17-7011, 2017 WL 4479371 (10th Cir. Oct. 5, 2017), is unavailing. In that case, we held that violent force requires more than offensive touching. Mr. Ontiveros seems to suggest that because Colorado second-degree assault requires no force at all, it cannot be a "violent felony." That skips the first step of the analysis which is what force, if any, the offense requires. Because we hold that it requires some force, then it cannot be that no force is required. The level of force required is certainly more than mere offensive touching.

10