**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

KEMP EUGENE CRAVENS,

      Defendant - Appellant.

No. 16-8111
(D.C. No. 2:16-CR-00095-SWS-1)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.

It is hard to imagine a more bizarre bank robbery than this one. Not only that, this

case seeks to further roil the boisterous seas unleashed by *Johnson v. United States*

*(Johnson II)*, --- U.S. ---, 135 S. Ct. 2551, 2557, 2563 (2015) (declaring the residual

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not encouraged, but not prohibited.
Fed. R. App. 32.1. Citation is appropriate as it relates to law of the case, issue preclusion
and claim preclusion. Unpublished decisions may also be cited for their persuasive
value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by
an appropriate parenthetical notation – (unpublished). *Id*.

clause of the Armed Career Criminal Act (ACCA) to be unconstitutional).

The issue presented comes down to this: whether the elements of the federal armed bank robbery statute satisfy the use or threatened use of <u>physical force</u> requirement necessary for an enhanced sentence. Its resolution involves the interplay of two federal statutes, the relevant portions of which follow:

## 18 U.S.C. § 2113

**(a)** Whoever, by <u>force and violence</u>, or by intimidation, takes, or attempts to take, from the person or presence of another, . . . any property or money. . . belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association

\* \* \* \*

Shall be fined under this title or imprisoned not more than twenty years, or both.

\* \* \* \*

**(d)** Whoever, in committing, or in attempting to commit, any **offense** defined in subsection[] (a) . . . of this section, <u>assaults any person</u>, or puts in jeopardy the life of any person <u>by the use of a dangerous weapon or device</u>, shall be fined under this title or imprisoned not more than twenty-five years, or both.

(Emphasis added.)

## 18 U.S.C. § 924

**(c)(1)(A)** Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to <u>any crime of violence</u> or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, <u>uses or carries a firearm</u>, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

\* \* \* \*

    **(ii)** if the firearm is brandished, be sentenced to a term of imprisonment of

- 2 -

not less than 7 years.

\* \* \* \*

**(3)** For purposes of this subsection the term "crime of violence" means an offense that is a felony and—

> **(A)** <u>has as an element</u> the use, attempted use, or threatened use of <u>physical force</u> against the **person** or property of another, or

> **(B)** that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

\* \* \* \*

**(4)** For purposes of this subsection, the term "brandish" means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.

(Emphasis added.)

## I. Factual Background

On May 3, 2016, Kemp Eugene Cravens entered the Platte Valley Bank in Evansville, Wyoming, with a semi-automatic handgun in his waistband. He approached the two tellers on duty and demanded money. While the tellers were retrieving money from their cash drawers, he withdrew the handgun from his waistband, displayed it to the tellers, and returned it to his waistband. He then walked away with approximately $14,000. Later that day he was arrested and, after being advised of and waiving his constitutional rights, confessed.

Cravens' motive remains a mystery. He was 63-years-old at the time of the robbery, but not in need of money. His wife and children were supportive. He had no prior criminal history. When arrested he told police officers "[h]e had no explanation"

- 3 -

for his actions other than that robbing a bank "was something he had thought of for the past 25 years."   (R. Vol. 2 at 24.)  As defense counsel described it at sentencing: "he got this idea a long time ago . . . and it's always been there gnawing at him . . . like an itch. And unfortunately one day . . . he decided to scratch it."  (R. Vol. 3 at 37.)  Unfortunate indeed, especially for on-duty bank employees who remain emotionally scarred as a result of Cravens' inexplicable actions.

Count 1 of the indictment charged Cravens with armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) (set forth above).  It <u>specified that the deadly weapon used was a firearm</u>.[1]  Count 2 charged him with using and brandishing a firearm during and in relation to a crime of violence—armed bank robbery—in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (also set forth above).[2]

---

[1] Count 1 of the indictment charged:

On or about May 3, 2016, in the District of Wyoming, the Defendant, **KEMP EUGENE CRAVENS**, by <u>force, violence and intimidation</u>, did take from the person and presence of another approximately $14,000 in money belonging to and in the care, custody, control, management and possession of the Platte Valley Bank in Evansville, Wyoming, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, and in committing such offense, the Defendant, **KEMP EUGENE CRAVENS**, <u>assaulted</u> and put in jeopardy the life of another person <u>by the use of a dangerous weapon</u>, *that is a firearm.*  In violation of 18 U.S.C. §§ 2113(a) and (d).

(R. Vol. 1 at 14 (emphasis added).)

[2] Count 2 charged:

On or about May 3, 2016, in the District of Wyoming, the Defendant, **KEMP EUGENE CRAVENS,** did knowingly <u>use and brandish a firearm</u> during and <u>in relation to a crime of violence</u>, namely bank robbery, as more
(Continued . . .)

Cravens moved to dismiss Count 2.  His only argument then was the one he makes now: the predicate offense—federal armed bank robbery—was not a qualifying "crime of violence" because it did not require the use of physical force, i.e., mechanical impact or the transfer of kinetic energy to the victim's person.[3]  His premise is, and was, exposing or threatening to expose a person to painful chemicals might be force, but not the required physical force.[4]

The district judge denied the motion.  Cravens ultimately pled guilty to both Counts 1 and 2, but he reserved his right to appeal from the denial of his motion to dismiss Count 2.  The judge sentenced him to 2 years imprisonment on Count 1 and imposed the mandatory minimum consecutive sentence of 7 years on Count 2, for a total term of imprisonment of 9 years.

---

fully alleged in Count One of this Indictment.  In violation of 18 U.S.C. § 924(c)(1)(A)(ii).

(R. Vol. 1 at 15 (emphasis added).)

[3] His argument relied upon language from *United States v. Rodriguez-Enriquez*, 518 F.3d 1191 (10th Cir. 2008).

[4] Section 924(c) also defines "crime of violence" as a felony offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the risk of force clause). *See* 18 U.S.C. § 924(c)(3)(B).  In seeking dismissal of Count 2, Cravens also argued armed bank robbery is not a "crime of violence" under the risk of force clause because that clause, like its similarly worded counterpart in the ACCA (18 U.S.C. § 924(e)(2)(B)(ii)), is unconstitutionally vague.  *See Johnson II*, 135 S. Ct. at 2557, 2563. Because federal armed bank robbery satisfies the elements clause of § 924(c)(3)(A), we need not decide whether the risk of force clause is unconstitutional in light of *Johnson II*.

## II. Discussion

Whether an offense is a "crime of violence" under § 924(c) is a matter we review de novo. *United States v. Serafin*, 562 F.3d 1105, 1107 (10th Cir. 2009); *see also United States v. Munro*, 394 F.3d 865, 870 (10th Cir. 2005). In doing so, we employ the "categorical approach," looking "only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction." *Serafin*, 562 F.3d at 1107-08 (quotation marks omitted); *see also Munro*, 394 F.3d at 870.

Cravens tells us (as he did the district judge) this statute is analogous to robbery under the common law, which could be committed by exposing or threatening to expose someone to painful chemicals or by using drugs to render the victim unconscious. According to him, it matters not a whit that he pled guilty to armed bank robbery <u>using a firearm</u> (Count 1)[5] because the categorical approach requires us to look at the least culpable conduct criminalized by the armed bank robbery statute and decide whether that conduct satisfies the elements test of § 924(c)(3)(A). *See Moncrieffe v. Holder*, --- U.S. ---, 133 S. Ct. 1678, 1684 (2013). A "dangerous weapon" under federal law, he tells us, can include virtually any object, including a can of mace or poison. But (and this is key

---

[5] Count 1 of the indictment specifically alleged the armed bank robbery involved use of a firearm. *See supra* note 1. At the change of plea hearing, Cravens pled guilty to Count 1 of the indictment and admitted he "had a handgun" in his holster, "pulled it out" and "showed it to [the tellers]." (R. Vol. 3 at 20.) He does not challenge his Count 1 conviction on appeal nor was his guilty plea conditioned on doing so. (R. Vol. 2 at 6.) That seems to end the matter. Nevertheless, we press on.

to his argument) the mandatory enhancement statute requires not just force or even deadly force, but physical force and chemical force is not physical force.

It seems sardonically humorous to suggest that armed bank robbery is not a "crime of violence." Yet, as is sometimes the case with the categorical approach, a technical reading of a criminal statute leads to anomalous results. Not here.

The lynchpin of Cravens' argument is *United States v. Rodriguez-Enriquez*, 518 F.3d 1191 (10th Cir. 2008). Rodriguez-Enriquez's criminal history included a Colorado conviction for "assault two (drugging a victim)." *Id*. at 1192. The statute of conviction prohibited the nonconsensual administration of a drug causing injury to another person. *Id*. The district court concluded the conviction was a "crime of violence" under USSG § 2L1.2(b)(1)(A)(ii) because it has "as an element the use, attempted use, or threatened use of physical force against the person of another." *Id*. (quotation marks omitted). We concluded otherwise.

The nonconsensual administration of a drug is not the use of "*physical force*" because the word "*physical*" does not "relate[] to the effect of the force" but rather refers "to the mechanism [or means] by which the force is imparted." *Id*. at 1193-94. As such, it requires a "mechanical impact" or the transfer of kinetic energy to the victim's body. *Id*. at 1194. Because the nonconsensual administration of a drug is achieved by chemical action, not by a mechanical impact, we concluded such offense is not a "crime of violence" under the elements clause of the guideline. *Id*. at 1195; *see also United States v. Perez-Vargas*, 414 F.3d 1282, 1285-86 (10th Cir. 2005) (concluding Colorado third-

degree assault is not a "crime of violence" under § 2L1.2 because it can be committed by "intentionally exposing someone to hazardous chemicals," which does not involve the use or threatened use of physical force); *but see United States v. Armijo*, 651 F.3d 1226, 1233 (10th Cir. 2011) ("*Rodriguez-Enriquez* stands for the limited proposition that a Colorado provision criminalizing the surreptitious drugging of a victim does not involve the use of physical force.").

We are not bound by the *Rodriguez-Enriquez* decision because the Supreme Court's decision in *United States v. Castleman*, --- U.S. ---, 134 S. Ct. 1405 (2014), freed us from its language and holding. *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993).

Castleman was charged with possessing a firearm after being convicted of a "misdemeanor crime of domestic violence" in violation of 18 U.S.C. § 922(g)(9). 134 S. Ct. at 1409. Congress defined "misdemeanor crime of domestic violence" as a misdemeanor offense under federal, state, or tribal law that "has, as an element, the use or attempted use of physical force . . . ." *Id*. (quoting 18 U.S.C. § 921(a)(33)(A)). Castleman claimed his prior conviction under Tennessee law for "intentionally or knowingly caus[ing] bodily injury to the mother of his child" did not constitute a "misdemeanor crime of domestic violence" because "it did not have, as an element, the use of physical force." *Id*. (quotation marks omitted). The Supreme Court disagreed.

The *Castleman* Court decided the requirement of "physical force" for purposes of § 922(g)(9) is satisfied "by the degree of force that supports a common-law battery conviction," i.e., "offensive touching." *Id*. at 1410, 1413. In doing so, it specifically

rejected the degree of force ("force capable of causing physical pain or injury to another person") it found necessary in *Johnson v. United States (Johnson I)*, 559 U.S. 133, 140 (2010), to satisfy the ACCA's elements clause. *Id*. at 1410-13. Castleman's prior conviction qualified as a "misdemeanor crime of domestic violence" because the statute of conviction required the "knowing or intentional causation of bodily injury," which "necessarily involves the use of physical force." *Id*. at 1413-14.

In so concluding, the Court rejected the district court's "reasoning that one can cause bodily injury without the use of physical force—for example, by deceiving the victim into drinking a poisoned beverage, without making contact of any kind." *Id*. at 1414 (quotation marks omitted). This time, relying on *Johnson I*, the Supreme Court explained: "'physical force' is simply 'force exerted by and through concrete bodies,' as opposed to 'intellectual force or emotional force.'" *Id*. (quoting *Johnson I*, 559 F.3d at 138). And, under the common law, the "concept of 'force' encompasses even its indirect application." *Id*. It also rejected Castleman's related argument that poisoning does not amount to a "use of force":

> The "use of force" in Castleman's example is not the act of "sprinkling" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.

*Id*. at 1415. That same reasoning has been elsewhere employed with a slight variation.[6]

---

[6] *See, e.g., United States v. Evans*, 699 F.3d 858, 864 (6th Cir. 2012) ("A

(Continued . . .)

Cravens claims *Castleman* did not overrule *Rodriguez-Enriquez* because it was limited to deciding the degree of "physical force" necessary to constitute a "misdemeanor crime of domestic violence." He says it adopted the common law definition of physical force, which requires only the slightest touching. In contrast, he says, *Johnson I* specifically rejected the common-law definition of "physical force" for purposes of defining "violent felony" under the ACCA's elements clause.

*Castleman* did indeed reject *Johnson I*'s construction of the ACCA's elements clause for purposes of defining "misdemeanor crime of domestic violence." But that rejection concerned only the <u>degree or amount</u> of force necessary to constitute a misdemeanor crime of domestic violence. The question in this case is the <u>means or mechanism</u> by which the force must be imparted. As to that question, *Castleman* specifically relied on *Johnson I*'s definition of physical force as "'force exerted by and through concrete bodies' as opposed to 'intellectual force or emotional force'" and decided the means could be either direct—a punch or a kick—or indirect—poisoning. *Castleman*, 134 S. Ct. at 1414 (quoting *Johnson I*, 559 F.3d at 138). And that reasoning directly conflicts with our holding in *Rodriguez-Enriquez* and "warrant[s] our retreat from its holding." *See Auraria Student Hous. at the Regency, LLC v. Campus Vill.*

---

defendant uses physical force under § 4B1.2(a)(1) when a defendant knowingly sets in motion a series of events that the defendant knows will result in the application of a force capable of causing physical pain or injury to another person"; for example, a defendant who places an unconscious victim in the middle of a road where the victim is run over by a car uses physical force even though it was the car, rather than the defendant, which directly caused the victim's injury) (quotation marks omitted).

*Apartments, LLC*, 843 F.3d 1225, 1232, 1242 (10th Cir. 2016) (concluding the Supreme Court had "adopted reasoning that require[d] a different result" from our precedent).

We recently said as much in *United States v. Ontiveros*, 875 F.3d 533 (10th Cir. 2017). Ontiveros argued his prior Colorado conviction for second degree assault was not a crime of violence under USSG § 2K2.1(a)(1). *Id*. at 535. That guideline, like § 924(c)(3)(A), defined "crime of violence" as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id*. (quotation marks omitted). The statute of conviction, Colo. Rev. Stat. § 18-3-203(1), prohibited a person from intentionally "caus[ing] serious bodily injury" to another person. *Id*. Ontiveros argued that because the statute focuses "on the result of the conduct (serious bodily injury), not the conduct itself, [it did] not necessarily require a showing of physical force." *Id*. at 536. He relied on *Perez-Vargas* and *Rodriguez-Enriquez*, both of which held intentionally exposing someone to hazardous chemicals did not involve the use or threatened use of physical force. *Id*. We concluded the reasoning of these cases was "no longer viable in light of *Castleman*." *Id*. In so concluding, we joined a majority of our sister circuits which decided *Castleman*'s discussion of the means by which the force must be imparted applied to the "physical force" requirement in the context of violent felonies. *Id*. at 537-38 (collecting cases).

In sum, the "use of physical force" necessary to satisfy the elements clause of § 924(c)(3)(A) includes the indirect application of force, i.e., exposing one to hazardous chemicals. Therefore, even assuming federal armed bank robbery can be committed by

exposing, or threatening to expose, a person to hazardous chemicals, that constitutes "the use, attempted use, or threatened use of <u>physical</u> force against the person or property of another." 18 U.S.C. § 924(c)(3)(A) (emphasis added).

**AFFIRMED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

Case No. 16-8111, *United States of America v. Cravens*
**O'BRIEN**, J., concurring.

When Cravens walked into the Platte Valley Bank he was armed with a handgun: not poison; not anthrax; not a hazardous chemical; not poisonous snakes. If the facts were to be considered, federal armed bank robbery would undoubtedly be a "crime of violence" under 18 U.S.C. § 924(c)(3)(A) because the use or threatened use of a firearm is unquestionably the use or threatened use of "physical force." That would be true even under the reasoning of *United States v. Rodriguez-Enriquez*, because a bullet penetrating a victim necessarily involves "mechanical impact." 518 F.3d 1191, 1194 (10th Cir. 2008).

But (for at least debatable reasons) these facts are off limits. *See Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 2284-85 (2013). The categorical approach turns entirely on whether a statute has as an element the use or threatened use of physical force. We are called upon to suspend disbelief (ignore reality) and instead consider hypothetical minimal ways a statute might be violated. Defendants come up with some doozies. Craven's argument is more sophisticated than some we have seen and is based upon one of our cases, *Rodriguez-Enriquez*.

*Castleman* overruled *Rodriquez-Enriquez* on the physical force point. I enthusiastically agree with the majority opinion as to that. I write separately to suggest not using the categorical approach in § 924(c) cases. Typically the categorical approach is applied to prior convictions to determine whether they constitute a predicate offense.

Section 924(c) analysis deals only with the facts of the instant case, not other cases.  The distinction is important.

In *Taylor v. United States*, the Supreme Court first applied the categorical approach in deciding whether a prior conviction constitutes a "violent felony" or "serious drug offense" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e).  495 U.S. 575, 602 (1990).  It adopted that approach primarily for two reasons.

First, the language of § 924(e) suggested Congress intended use of the categorical approach:

> Section 924(e)(1) refers to "a person who . . . has three previous convictions" for—not a person who has committed—three previous violent felonies or drug offenses.  Section 924(e)(2)(B)(i) defines "violent felony" as any crime punishable by imprisonment for more than a year that "has as an element"—not any crime that, in a particular case, involves—the use or threat of force.

*Id*. at 600; *see also Johnson v. United States (Johnson II)*, --- U.S. ---, 135 S. Ct. 2551, 2562 (2015) (the ACCA's "emphasis on convictions indicates that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions") (quotation marks omitted).

Second, it noted "the practical difficulties and potential unfairness of a factual approach," namely, the sentencing court having to conduct mini-trials to determine the underlying facts of a prior conviction.  *Id*. at 601; *see also Johnson II*, 135 S. Ct. at 2562 ("*Taylor* also pointed out the utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction.").

2

Since *Taylor*, the categorical approach has been applied in other contexts outside the ACCA. *See, e.g., Esquival-Quintana v. Sessions*, --- U.S. ---, 137 S. Ct. 1562, 1567-68 (2017) (considering whether an alien has been "convicted of an aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii)); *United States v. Castleman*, --- U.S. ---, 134 S. Ct. 1405, 1413-14 (2014) (determining whether defendant had "been convicted in any court of a misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9)); *United States v. Madkins*, 866 F.3d 1136, 1144 (10th Cir. 2017) (deciding whether defendant "has at least two prior felony convictions of either a crime of violence or a controlled substance offense" under the career offender guideline, USSG § 4B1.1).

Without much discussion, we have also extended it to deciding whether an offense is a "crime of violence" or "drug trafficking crime" under 18 U.S.C. § 924(c). *See United States v. Serafin*, 562 F.3d 1105, 1107 (10th Cir. 2009); *United States v. Munro*, 394 F.3d 865, 870 (10th Cir. 2005). But the reasons for applying the categorical approach to decide whether a past conviction constitutes a predicate offense are simply not present when deciding the issue in the § 924(c) context.

For one, § 924(c) does not use the word "conviction." Rather, it requires an increased punishment for those who use, carry, or possess a firearm "during and in relation to [or in furtherance of] any crime of violence or drug trafficking crime." *See* 18 U.S.C. § 924(c)(1)(A). In other words, § 924(c) focuses on whether the <u>instant offense</u> is a "crime of violence" or "drug-trafficking crime."[1]

---

[1] In adopting the use of the categorical approach for deciding whether a prior conviction is a "violent felony" under the ACCA, *Taylor* also relied on the use of the

3

Moreover, there is no need to conduct a mini-trial to decide the underlying facts of an <u>instant offense</u>. 654 F.3d at 1142. That determination can be made from readily available facts and by a jury, if necessary.

We made this same observation in *United States v. Perez-Jimenez*, 654 F.3d 1136 (10th Cir. 2011). The sentencing judge concluded Perez-Jimenez was a career offender under USSG § 4B1.1(a). *Id*. at 1139. One of the requirements for such status is that "'the *instant offense of conviction* is a felony that is . . . a crime of violence . . . .'" *Id*. (quoting USSG § 4B1.1(a)(2)) (emphasis added). The instant offense was possession of a weapon in prison. *Id*. at 1139-40. The parties agreed the offense did not satisfy the force clause or the enumerated offense clause of the guidelines' "crime of violence" definition. *Id*. at 1140. So the question was whether it satisfied the guidelines' residual clause. *Id*. In resolving the question, we decided that consideration of the underlying facts of the instant offense was permissible:

> To determine whether a *past* conviction is for a crime of violence, "we employ a categorical approach that looks to the words of the statute and judicial decisions interpreting it, rather than to the conduct of any particular defendant convicted of the crime." *United States v. Wise*, 597 F.3d 1141, 1144 (10th Cir.

word "element"—rather than the word "involves"—in § 924(e)(2)(B)(i)'s definition of "violent felony." 495 U.S. at 600. Section 924(c)'s definition of "crime of violence" also uses the word "element." *See* 18 U.S.C. § 924(c)(3)(A). Nevertheless, the ACCA's (now defunct) residual clause used the language "*involves conduct* that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). This language, which was still in place at the time of *Taylor*, suggests a fact-based inquiry. Nevertheless, the *Taylor* court concluded the facts were not relevant in deciding whether a prior conviction constitutes a "violent felony" under the ACCA, whether under the elements, enumerated offense, or residual clauses. 495 U.S. at 600. Indeed, in *Johnson II*, the Supreme Court refused to save the residual clause by abandoning the categorical approach for purposes of applying it. 135 S. Ct. at 2561-62.

4

2010) (citing *Taylor v. United States*, 495 U.S. 575, 602, 110 S. Ct. 2143, 109 L.Ed.2d 607 (1990)), *cert. denied*, 79 U.S.L.W. 3710 (2011) . . . .

However, our precedent explicitly permits the use of a conduct-specific inquiry "when considering whether the *instant* offense is a crime of violence." *Riggans*, 254 F.3d at 1204 (emphasis added) (quoting *United States v. Smith*, 10 F.3d 724, 731 n. 10 (10th Cir.1993)) (internal quotation marks omitted). Under the conduct-specific inquiry, the "court correctly consider[s] the facts underlying [the defendant's] conviction" in determining whether it is for a crime of violence. *Id.* Although we have explained that "the practical difficulties of conducting an ad hoc mini-trial" require application of the categorical approach to *past* convictions, we may apply a conduct-specific inquiry to *instant* offenses because "these concerns do not apply when the court is examining the conduct of the defendant in the instant offense." *Id.* at 1203–04 (alteration in original) (quoting *United States v. Walker*, 930 F.2d 789, 794 (10th Cir.1991)) (internal quotation marks omitted).

*Id.* at 1140-41.

Admittedly, *Perez-Jimenez* addressed whether an instant offense satisfied the residual clause of § 4B1.2(a)(2), i.e., whether it "*involves conduct* that presents a serious potential risk of physical injury to another." (Emphasis added). In this case, on the other hand, we are concerned with whether the instant offense "has as *an element* the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A) (emphasis added). But *Perez-Jiminez* did not rely on this distinction in deciding the categorical approach did not apply. Rather, the relevant distinction was between a past conviction and an instant offense.

A number of district courts have also questioned the use of the categorical approach in § 924(c) cases, at least in the context of a pretrial motion to dismiss. *See United States v. Checora*, 155 F. Supp. 3d 1192, 1195 (D. Utah 2015) (collecting cases). In *Checora*, Judge Kimball reasoned:

[W]hile the statutory language between the Armed Career Criminal Act (ACCA), which was the genesis of the categorical approach, and 18 U.S.C. § 924(c)(3) may be similar, the question of whether a crime is a crime of violence arises in significantly different contexts under the two statutes. The ACCA provides enhanced punishment for persons with three previous convictions for a violent felony. A violent felony under the ACCA is any crime punishable by imprisonment for more than one year that has as an element the use, attempted use, or threatened use of physical force against the person of another. While the language of the ACCA's force clause is nearly identical to § 924(c)(3)(A), a court determining whether a prior offense under the ACCA is a violent felony is conducting a cold record review of a prior conviction whereas a court determining a crime of violence under § 924(c)(3) is looking at a predicate crime that is charged in the same case. Because the court in a § 924(c)(3) case is not looking at a prior conviction where facts may be lost or unclear, there is no danger of a collateral trial or judge found facts. The Court is instead dealing with a live case where fresh evidence will be presented to a jury. A jury can and will determine whether the government has proven the elements of the alleged predicate crimes beyond a reasonable doubt. Sixth Amendment concerns could be quelled by putting the factual questions about the violent nature of the crime to the jury and, if necessary, obtaining the answers by special verdict.

155 F. Supp.3d at 1195-96 (citations and quotation marks omitted) (emphasis added).

It is time to re-think our use of the categorical approach in § 924(c) cases. Easily determined facts are always preferable to rank speculation.