**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DONOVAN MUSKETT,

    Defendant - Appellant.

No. 17-2123
(D.C. Nos. 1:16-CV-00596-MCA-SMV &
1:13-CR-00980-MCA-1)
(D. N.M.)

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:16-CV-00596-MCA-SMV)**
_____

Aric G. Elsenheimer, Assistant Federal Public Defender, Albuquerque, New Mexico, for
Defendant - Appellant.

Jennifer M. Rozzini, Assistant United States Attorney (John C. Anderson, United States
Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.
_____

Before **BACHARACH**, **McHUGH**, and **EID**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

In this 28 U.S.C. § 2255 case, Donovan Muskett appeals the denial of his motion

to vacate his federal conviction for brandishing a firearm in furtherance of a crime of

violence on the basis of the Supreme Court's decision in *United States v. Davis*, 139

S. Ct. 2319 (2019) (invalidating the residual clause in 18 U.S.C. § 924(c)'s definition of a "crime of violence" as unconstitutionally vague).

The parties' primary dispute on appeal is whether Mr. Muskett's predicate federal felony—assault with a dangerous weapon, 18 U.S.C. § 113(a)(3)—qualifies as a crime of violence under the elements clause,[1] thereby rendering harmless the *Davis* defect in his conviction. Mr. Muskett suggests that we must conduct this analysis using the law as it existed at the time of his conviction because application of current law would violate due process limits on the retroactive application of judicial decisions enlarging criminal liability.

As explained below, our precedent compels the conclusion that assault with a dangerous weapon is categorically a crime of violence under the elements clause. And we conclude that at the time of his offense, Mr. Muskett had fair notice that § 924(c)'s elements clause could ultimately be construed to encompass his commission of assault with a dangerous weapon. We thus affirm the district court's denial of Mr. Muskett's § 2255 motion.

---

[1] The government's briefing, as well as some lower court decisions, refer to the definition of "crime[s] of violence" set forth at § 924(c)(3)(A) as the "force clause" rather than the "elements clause." *See, e.g.*, App. Vol. I, at 53 ("[T]he United States only needs to establish that one of these predicates is a crime of violence under the force clause."). In this opinion, we follow the Supreme Court's convention in *Davis* of referring to that definition as the "elements clause."

## I. BACKGROUND

### A. *Mr. Muskett's Federal Conviction*

On August 22, 2013, a grand jury returned a superseding indictment that charged

Mr. Muskett with four counts: assault with a dangerous weapon in Indian Country under

18 U.S.C. § 113(a)(3); aggravated burglary in Indian Country (based on New Mexico's

aggravated burglary statute by way of the federal Assimilative Crimes Act); using,

carrying, possessing, and brandishing a firearm during and in relation to and in

furtherance of a crime of violence under 18 U.S.C. § 924(c); and negligent child abuse in

Indian Country.

On November 6, 2013, Mr. Muskett entered into a plea agreement pursuant to

Federal Rule of Criminal Procedure 11(c)(1)(C).[2] Under that agreement, Mr. Muskett

pleaded guilty only to the § 924(c) charge[3] (for using, carrying, possessing, and

brandishing a firearm in furtherance of a crime of violence), and the government agreed

to dismiss the three remaining counts. Pursuant to Rule 11(c)(1)(C), the parties agreed

---

[2] Plea agreements reached under Rule 11(c)(1)(C) contain provisions requiring the government to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)."

[3] To be convicted under § 924(c), a defendant need not be convicted of, or even charged with, a predicate crime of violence. Rather, a violation of § 924(c) is complete when a firearm is used, carried, possessed, or brandished in furtherance of a felony crime of violence "for which the [defendant] *may* be prosecuted in a court of the United States." 18 U.S.C. § 924(c)(1)(A) (emphasis added).

that, contingent on the district court's acceptance of the plea agreement, Mr. Muskett would be sentenced to an 84-month term of imprisonment.

On March 11, 2014, the district court accepted Mr. Muskett's plea and sentenced him to 84 months of imprisonment followed by a three-year term of supervised release.[4]

## B. *Mr. Muskett's § 2255 Proceedings*

On June 16, 2016, just under a year after the Supreme Court invalidated the Armed Career Criminal Act's residual clause definition of "violent felony" in *Johnson v. United States*, 135 S. Ct. 2551 (2015), Mr. Muskett filed a 28 U.S.C. § 2255 motion seeking to vacate his conviction and to "set this matter for resentencing on the remaining counts of the indictment." App. Vol. I, at 31–42. Mr. Muskett argued that the residual clause invalidated by *Johnson* was "materially indistinguishable from the residual clause under [§] 924(c)," and thus § 924(c)'s residual clause was similarly unconstitutional. App. Vol. I, at 34. Mr. Muskett further asserted that none of his predicate, dismissed charges qualified as crimes of violence under § 924(c)'s elements clause, and thus his conviction could not be sustained under that definition.

On June 2, 2017, the magistrate judge to whom Mr. Muskett's § 2255 motion had been referred issued proposed findings and a recommendation that Mr. Muskett's motion

---

[4] According to the Bureau of Prisons' Inmate Locator, of which we may take judicial notice, Mr. Muskett was released from prison on February 14, 2020. His release did not moot his § 2255 motion challenging his conviction, however, because if he were successful before us, his conviction would be vacated entirely, thereby eliminating his three-year term of supervised release—which portion of his sentence also continues to satisfy the "in custody" requirement of § 2255. *See United States v. Cervini*, 379 F.3d 987, 989 n.1 (10th Cir. 2004).

be denied. The magistrate judge concluded that even if § 924(c)'s residual clause was invalid, Mr. Muskett's commission of assault with a dangerous weapon (as criminalized by 18 U.S.C. § 113(a)(3)) satisfied the elements clause.

Mr. Muskett timely objected to the magistrate's conclusion that his conviction could be sustained under the elements clause, but on July 6, 2017, the district judge overruled that objection, adopted the magistrate's findings and recommended disposition, denied Mr. Muskett's § 2255 motion, and declined to issue a Certificate of Appealability ("COA").

Following a timely notice of appeal, Mr. Muskett filed his opening brief in this court in which he sought a COA. In March of 2019, the Clerk's office entered an order abating Mr. Muskett's appeal pending resolution of our then-pending appeal in *United States v. Bowen*, a case already abated pending the Supreme Court's resolution of *Davis*.

In June of 2019, the Supreme Court issued its decision in *Davis*, invalidating § 924(c)'s residual clause as "unconstitutionally vague."[5] 139 S. Ct. at 2336. In September of 2019, we issued our decision in *Bowen*, concluding that "*Davis*'s new rule

---

[5] In its response brief, the government asserted, and then seemingly withdrew, a challenge to the timeliness of Mr. Muskett's § 2255 motion on grounds that he failed to file a new motion *after* the Supreme Court issued its decision in *Davis*, and that he was required to do so to avail himself of the limitations period prescribed by § 2255(f)(3). *See* 28 U.S.C. § 2255(f)(3) (providing a one-year limitations period that begins to run on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"). After the panel sought clarification at oral argument, the government explicitly relinquished its right to invoke timeliness as a bar to Mr. Muskett's § 2255 motion. Oral Argument at 38:32–38:42. We accept that concession.

is substantive and therefore retroactively applicable to cases on collateral review." *United States v. Bowen*, 936 F.3d 1091, 1100 (10th Cir. 2019).

Shortly after our decision in *Bowen*, we entered an order lifting the abatement in this appeal and granting Mr. Muskett a broad COA encompassing the entirety of the district court's denial of his § 2255 motion. We further ordered supplemental briefing to permit the parties to address the effect of *Bowen* and *Davis* on Mr. Muskett's entitlement to post-conviction relief.

## II.    DISCUSSION

Under 28 U.S.C. § 2255(a),

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Pursuant to this statute, Mr. Muskett seeks to vacate his conviction based on the Supreme Court's invalidation of § 924(c)'s residual clause definition of a "crime of violence." *See Davis*, 139 S. Ct. at 2336. The government counters that Mr. Muskett's predicate federal felony—assault with a dangerous weapon—separately satisfies § 924(c)'s elements clause definition, and thus any *Davis* infirmity in Mr. Muskett's conviction is harmless.

"On appeal from the denial of a § 2255 motion, . . . we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Snyder*, 871 F.3d 1122, 1125 (10th Cir. 2017) (internal quotation marks omitted). Because the parties' dispute on appeal is purely legal, our review is de novo.

6

To prevail on appeal, Mr. Muskett must establish that his conviction cannot be sustained under § 924(c)'s elements clause.[6] Under § 924(c)'s elements clause, an offense is a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). To determine whether Mr. Muskett's commission of assault with a dangerous weapon qualifies as a crime of violence under the elements clause, we apply the categorical approach. *See Bowen*, 936 F.3d at 1102. Under that framework, we must first identify the minimum force required to commit the crime of assault with a dangerous weapon, and then "determine if that force categorically fits the definition of physical force." *United States v. Ontiveros*, 875 F.3d 533, 535–36 (10th Cir. 2017) (quotation marks omitted).

According to Mr. Muskett, we must decide whether his crime falls within the elements clause based on the law as it existed at the time he committed it. To better contextualize Mr. Muskett's argument concerning retroactive application of current law, we begin our analysis by tracing the development of precedent from this court and the

---

[6] As with collateral attacks based on the Supreme Court's invalidation of the residual clause contained in the Armed Career Criminal Act, *see Johnson v. United States*, 135 S. Ct. 2551 (2015), our analysis of a motion seeking relief on the basis of *Davis* proceeds in two stages. "The first question asks, *as a matter of historical fact*, whether the sentencing court relied on [§ 924(c)'s] residual clause" in accepting the plea and imposing a sentence. *See United States v. Lewis*, 904 F.3d 867, 872 (10th Cir. 2018) (emphasis in original). Only if the answer is yes do we proceed to the second stage, a harmless error analysis that asks whether the movant's predicate crime separately qualifies under § 924(c)'s still-valid elements clause. *See id.* We conduct only the second inquiry here because the government concedes Mr. Muskett has established that his conviction rested on § 924(c)'s residual clause.

7

Supreme Court interpreting "physical force" as used in various federal statutes and the United States Sentencing Guidelines (the "Guidelines").

**A.** *Changes in the Interpretation of "Physical Force"*

Now, as in 2013 when Mr. Muskett brandished a firearm in furtherance of the crime of assault with a dangerous weapon, the "force" component in "physical force" refers to "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States* (*Curtis Johnson*), 559 U.S. 133, 140 (2010). As indicated by the presence of "capable" in that definition, violent force "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality." *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019). And now, as in 2013, "physical" refers to the *type* of force employed: "force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force." *Curtis Johnson*, 559 U.S. at 138.

But while these definitions were static both before and after Mr. Muskett's conduct, our precedent addressing whether such "physical force" must be applied directly to the person or property of another to qualify under the elements clause was not. That is, whether persons employ "physical force" when they do not directly impart such force onto the person or property of another (by, for example, poisoning another's drink) has undergone some revision, at least in this court, in the period following Mr. Muskett's offense.

In *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005), *overruled by Ontiveros*, 875 F.3d 533, we analyzed whether Colorado's crime of third-degree assault

8

was categorically a crime of violence so as to qualify for a sentencing enhancement under the Guidelines.[7] We explained that the predicate Colorado crime was committed when a defendant "knowingly or recklessly causes bodily injury to another person or with criminal negligence he causes bodily injury to another person by means of a deadly weapon." *Id.* at 1285 (quoting Colo. Rev. Stat. § 18-3-204). And we noted that Colorado's statute focused on the *result* of the defendant's conduct ("bodily injury to another"), and as such could be violated by "recklessly shooting a gun in the air to celebrate, intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." *Id.* at 1286.

By contrast, we explained, the Guidelines' definition of "crime of violence" focused on the *means* "by which an injury occurs (the use of physical force)." *Id.* at 1285; *accord United States v. Rodriguez-Enriquez*, 518 F.3d 1191, 1194 (10th Cir. 2008) ("[T]he adjective *physical* must refer to the mechanism by which the force is imparted to the 'person of another.'"), *overruled by Ontiveros*, 875 F.3d 533. We thus concluded that Colorado third-degree assault could be committed, as in one of the above hypotheticals, without the use of direct physical force, and was therefore "not categorically a crime of violence under [the Guidelines]." *Perez-Vargas*, 414 F.3d at 1287.

---

[7] The Guidelines' elements definition of "crime of violence" is indistinguishable from the elements clause in § 924(c) except that the Guidelines' definition is limited to "physical force against the person of another," U.S.S.G. § 2L1.2 cmt. n.2, whereas § 924(c) encompasses "physical force against the person *or property* of another," § 924(c)(3)(A) (emphasis added).

9

In March of 2014—just one week after the sentencing court entered final judgment on Mr. Muskett's conviction—the Supreme Court issued its decision in *United States v. Castleman*, 572 U.S. 157 (2014). In that case, the Court resolved a circuit split regarding the level of force required to commit a "misdemeanor crime of domestic violence." *See* 18 U.S.C. § 921(a)(33)(A)(ii). Specifically, the Court interpreted the term "physical force" in that statute's elements clause[8] to mean "the common-law meaning of 'force.'" *Castleman*, 572 U.S. at 168. And the Court reiterated its conclusion from *Curtis Johnson* that "'physical force' is simply 'force exerted by and through concrete bodies,' as opposed to 'intellectual force or emotional force.'" *Id.* at 170 (quoting *Curtis Johnson*, 559 U.S. at 138). Under this expansive definition, "the common-law concept of 'force' encompasses even its indirect application" and will be satisfied "by administering a poison or by infecting with a disease, or even by resort to some intangible substance, such as a laser beam." *Id.* (internal quotation marks omitted). "It is impossible," the Court concluded, "to cause bodily injury without applying force in the common-law sense." *Id.*

In light of *Castleman*'s expansive interpretation of "physical force," we overruled *Perez-Vargas*'s direct-indirect distinction in *Ontiveros*, explaining that *Perez-Vargas* had

---

[8] The elements clause definition of a domestic crime of violence is generally similar to § 924(c)'s elements clause, at least insofar as its "physical force" requirement is concerned. A "domestic crime of violence" is defined as an offense that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim."

"relied on reasoning that is no longer viable." *Id.* at 536, 538 ("To the extent that *Perez-Vargas* holds that indirect force is not an application of 'physical force,' that holding is no longer good law."). We also expressly extended *Castleman*'s interpretation "to the 'physical force' requirement as used in a felony crime of violence." *Id.* at 537.

In sum, after *Ontiveros*, an offense will qualify as a "crime of violence" under § 924(c)(3)(A) if it "has as an element the use, attempted use, or threatened use" of physical force (as opposed to intellectual or emotional force), applied directly or indirectly, that is *capable* of causing physical pain or injury to "the person or property of another." *See* § 924(c)(3)(A). With this definition in mind, we next analyze the minimum force required to commit assault with a dangerous weapon, 18 U.S.C. § 113(a)(3).

### B. *The Elements of Assault with a Dangerous Weapon*

Title 18, U.S. Code § 113(a) criminalizes eight variations of assault. In *United States v. Hathaway*, 318 F.3d 1001, 1008 (10th Cir. 2003), we defined assault in § 113(a) "as either an attempted battery or as placing another in reasonable apprehension of immediate bodily harm." Specifically, we explained, assault under § 113(a) is committed by "either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm."[9] *Id.* (quotation

---

[9] In his supplemental opening brief, Mr. Muskett suggests that assault under § 113(a) can be committed by a mere "offensive touching." Aplt.'s Suppl. Br. at 17. But we have long held that assault as used in § 113(a) requires an attempt or threat to "inflict injury." *See, e.g.*, *United States v. Joe*, 831 F.2d 218, 220 (10th Cir. 1987).

11

marks omitted); *accord United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017) ("[A]n individual may violate § 113 by (1) willfully attempting to inflict injury on another person or (2) threatening to inflict injury on another person, causing a reasonable apprehension of immediate bodily harm.").

Subsection (a)(3)—assault with a dangerous weapon—adds two elements to the above definition: first, the presence of a dangerous weapon, and second, the intent to do bodily harm. 18 U.S.C. § 113(a)(3) ("Assault with a dangerous weapon, with intent to do bodily harm, [is punishable] by a fine under this title or imprisonment for not more than ten years, or both.").

Combining the elements of assault with the additional elements prescribed by subsection (a)(3), the crime of assault with a dangerous weapon is committed when a person either (1) willfully attempts to inflict injury upon another person with a dangerous weapon and with the intent to do bodily harm, or (2) threatens to inflict injury upon the person of another with a dangerous weapon and with the intent and apparent present ability to do so, thereby causing reasonable apprehension of immediate bodily harm.

Under this definition, assault with a dangerous weapon cannot be committed without the "attempted use, or threatened use of physical force against the person or property of another." *See* 18 U.S.C. § 924(c)(3)(A). Stated simply, if one has attempted or threatened to inflict *injury* upon another person (thereby committing federal criminal assault), he has attempted or threatened physical force capable of causing physical pain or injury.

Mr. Muskett maintains that a conviction under § 113(a)(3) can be sustained without the use of "violent force—that is, force capable of causing physical pain or injury to another person." *Curtis Johnson*, 559 U.S. at 140. In support, he points to *United States v. Spotted Horse*, 916 F.3d 686, 689 (8th Cir. 2019), an appeal from a jury verdict convicting the defendant of three counts of assault with a dangerous weapon for beating the victim with a plastic spoon, a plastic blind wand (with which he struck the victim "numerous times across the back . . . as she screamed, cried, and begged him to stop"), and a plastic hanger (with which he struck the victim "across the back until the hanger broke"). The issues on appeal in *Spotted Horse* did not relate to the degree of force required to commit assault with a dangerous weapon. But even with the decision's sparse description of the conduct, we easily conclude the force employed fell safely within the definition of "physical force"—repeatedly striking another person across the back with various plastic implements is plainly "capable of causing physical pain or injury." *Curtis Johnson*, 559 U.S. at 140.

Mr. Muskett's arguments to the contrary appear to be premised on an overreading of *Curtis Johnson*, suggesting that "physical force" requires resultant "*serious* physical injury." Aplt.'s Suppl. Br. at 18 (emphasis added). But no such degree-of-injury requirement exists. Rather, a person exerts physical force when the force applied is "capable of causing physical pain or injury to another person." *Curtis Johnson*, 559 U.S. at 140; *see also Stokeling*, 139 S. Ct. at 554 ("[*Curtis*] *Johnson* . . . does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality.").

13

In sum, the crime of assault with a dangerous weapon cannot be committed without the use, attempted use, or threatened use of physical force capable of causing, directly or indirectly, physical pain or injury. Mr. Muskett's commission of that offense is therefore categorically a crime of violence under § 924(c)'s elements clause.

## C. *Mr. Muskett's Fair Notice Challenge*

Mr. Muskett argues that we should decline to apply *Ontiveros* (in which we overruled our previously recognized distinction between direct and indirect physical force) because that case was decided after his commission of assault with a dangerous weapon. To give it retroactive effect, Mr. Muskett suggests, would be to deprive him of his due process right to have fair notice of what the law proscribes.

Mr. Muskett characterizes this challenge as an ex post facto attack. But the Ex Post Facto Clause, appearing in Article I of the Constitution, "is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of government." *Marks v. United States*, 430 U.S. 188, 191 (1977) (citation omitted); *see* U.S. Const. art. I, § 9, cl. 3 ("No . . . ex post facto Law shall be passed."). It is the Due Process Clause of the Fifth Amendment that imposes "limitations on *ex post facto* judicial decisionmaking." *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001).

Under the Due Process framework, "[i]f a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect." *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964) (internal quotation marks omitted). "[A]lthough clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain

14

statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (citations omitted). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267.

Retroactive application of *Castleman* and *Ontiveros* does not offend these principles for three reasons. First, at the broadest level, the enlargement effected by *Castleman*—and *Ontiveros* in turn—is a far cry from the kind of "novel" constructions found by the Supreme Court to deprive a defendant of fair notice. For example, in *Bouie*, the defendants had been convicted of violating a state statute criminalizing "entry upon the lands of another . . . after notice from the owner or tenant prohibiting such entry." 378 U.S. at 349–50 (quoting the then-existing version of South Carolina's criminal trespass statute). But the defendants were convicted of that offense not for having *entered* premises in the face of notice prohibiting entry, but rather for having *remained* on premises after being told to leave. *Id.* After the conduct giving rise to defendants' convictions, the South Carolina Supreme Court "construed the statute to cover not only the act of entry on the premises of another after receiving notice not to enter, but also the act of remaining on the premises of another after receiving notice to leave." *Id.* at 350.

The retroactive application of this interpretation, the Supreme Court held, "violated the requirement of the Due Process Clause that a criminal statute give fair warning of the conduct which it prohibits." *Id.* Crucial to the Court's holding was the fact

15

that the statutory language had evinced no ambiguity—the statute was "on its face . . .

definite and precise." *Id.* at 353; *see Marks*, 430 U.S. at 195 (explaining that in *Bouie*,

"[t]he statutory language . . . was 'narrow and precise,' and that fact was important to our

holding that the expansive construction adopted by the State Supreme Court deprived the

accused of fair warning" (quoting *Bouie*, 378 U.S. at 352)). Indeed, the Court noted, any

"uncertainty as to the statute's meaning [wa]s itself not revealed until the [state supreme]

court's decision." *Bouie*, 378 U.S. at 352.

Compounding the notice deficiency was the fact that the enlarged construction,

"so clearly at variance with the statutory language, ha[d] not the slightest support in prior

South Carolina decisions." *Id.* at 356. To the contrary,

> in the 95 years between the enactment of the statute in 1866 and [the
> expansive construction adopted in] 1961 . . . , the South Carolina cases
> construing the statute uniformly emphasized the notice-before-entry
> requirement, and gave not the slightest indication that the requirement
> could be satisfied by proof of the different act of remaining on the land
> after being told to leave.

*Id.* at 356–57.

By contrast, the language at issue here—"physical force"—cannot be said to have

been "on its face . . . definite and precise," *see id.* at 353, nor was there an absence of

judicial decisions revealing the direct-indirect ambiguity. Indeed, as explained in more

detail below, federal courts have grappled with the uncertainty apparent on the face of the

statute and have arrived at conflicting conclusions as to whether "physical force"

encompasses indirect application. Thus, far from construing an unambiguous statute in

unexpected and indefensible ways, *Castleman* (and our resulting correction in *Ontiveros*)

16

merely "supplied . . . judicial gloss on an otherwise uncertain statute." *See Lanier*, 520

U.S. at 266.

Second, the Supreme Court's opinion in *Curtis Johnson*—decided nearly three

years before the conduct that forms the basis of Mr. Muskett's conviction—provided

notice that the logic of *Perez-Vargas* rested on shaky foundations. In *Curtis Johnson*, the

Supreme Court undertook an exhaustive interpretive dive into "physical force" as used in

the Armed Career Criminal Act. *Curtis Johnson*, 559 U.S. at 138–42. The Court

explained that "physical" "plainly refers to force exerted by and through concrete

bodies—distinguishing physical force from, for example, intellectual force or emotional

force." *Id.* at 138. And in *Castleman*, the Supreme Court indicated that this portion of

*Curtis Johnson* had, in part, foreclosed the logic we adopted in *Perez-Vargas*.[10]

> The District Court [in this case] . . . reason[ed] that one can cause bodily
> injury "without the 'use of physical force'"—for example, by "deceiving
> [the victim] into drinking a poisoned beverage, without making contact of
> any kind." But as we explained in [*Curtis*] *Johnson,* "physical force" is
> simply "force exerted by and through concrete bodies," as opposed to
> "intellectual force or emotional force."

*Id.* at 170 (fourth alteration in original) (record citation omitted) (quoting *Curtis Johnson*,

559 U.S. at 138). Thus, although it did not specifically reject the direct-indirect

distinction accepted by *Perez-Vargas* the way *Castleman* ultimately did, *Curtis Johnson*

provided fair notice that "physical" did not refer to the physical relationship, as a

---

[10] Although the Supreme Court decided *Castleman* after Mr. Muskett's conduct, it
relied heavily on the reasoning of *Curtis Johnson*, which was available before the
conduct that forms the basis of the conviction here.

17

proximal matter, between the person imparting the force and the victim receiving it, but was rather used to distinguish the type of force (*i.e.*, neither intellectual nor emotional) capable of causing physical pain or injury. And that construction provided sufficient notice that "physical force" might include *any* exertion of physical force (directly or indirectly) capable of causing physical pain or injury to another person, and that our previous interpretation to the contrary was incorrect.

The dissent downplays the degree to which *Curtis Johnson*'s interpretation of "physical force" cast doubt on the viability of our earlier opinions embracing the direct-indirect distinction, asserting that neither *Curtis Johnson* nor our earlier opinions "need[ed]" to opine on the proper interpretation of "physical" as used in "physical force. Dissent at 6–7. We respectfully disagree. In *Rodriguez-Enriquez*, 518 F.3d at 1191, 1194, 1195, we found the reasoning of *Perez-Vargas* "instructive" in reaching the conclusion that "assault two (drugging a victim) under Colorado law" was not a crime of violence because "injury effected by chemical action on the body (as in poisoning or exposure to hazardous chemicals) should not be described as caused by *physical force*." But aside from the "instructi[on]" of *Perez-Vargas*, our conclusion in *Rodriguez-Enriquez* was supported exclusively by an interpretation of "physical force" that was subsequently flatly rejected by *Curtis Johnson*. *Compare Rodriguez-Enriquez*, 518 F.3d at 1194 (concluding that "the adjective *physical* must refer to the mechanism by which the force is imparted to the 'person of another'" because it "seems highly unlikely" that it "is being used to distinguish the described force from a force generated by emotion, psychology, religion, or rhetoric"), *with Curtis Johnson*, 559 U.S. at 138 ("The adjective 'physical'

18

. . . . plainly refers to force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force."). Given the centrality of our erroneous interpretation of "physical force" to the disposition of *Rodriguez-Enriquez*, an individual seeking to assure himself that he could impart indirect physical force capable of causing physical pain or injury upon another person without triggering criminal liability under § 924(c) would be rightly concerned by *Curtis Johnson*'s clear repudiation of our interpretation.

Indeed, at oral argument, Mr. Muskett focused our attention on the interpretation adopted by *Rodriguez-Enriquez*, arguing he was entitled to rely on that opinion's "thorough analysis of . . . the term 'physical force'" and its resulting conclusion that "physical" does not refer to the effect of the force. Oral Argument at 4:30–4:45. We might be inclined to agree if the interpretation we rejected in *Rodriguez-Enriquez* as "highly unlikely" had not been subsequently adopted by the Supreme Court in *Curtis Johnson*. *See Rodriguez-Enriquez*, 518 F.3d at 1194. Thus, even if the dissent is correct that Mr. Muskett should be entitled to rely on settled in-circuit precedent notwithstanding an out-of-circuit opinion resolving the categorical question against him, there was nothing "settled" about *Perez-Vargas* and *Rodriguez-Enriquez* following the Court's unambiguous rejection of our interpretation of "physical force" in *Curtis Johnson*.

Third, the Supreme Court instructs that the existence of a circuit split on the scope of a criminal statute is sufficient to supply defendants with fair notice that the broader construction might ultimately be adopted, even when the defendant's circuit has adopted the more narrow interpretation. In *United States v. Rodgers*, 466 U.S. 475, 484 (1984),

19

after construing the reach of a criminal statute against the defendant and contrary to the interpretation previously adopted by the circuit in which his case arose, the Supreme Court concluded that "any argument . . . against retroactive application to him of our present decision . . . would be unavailing since the existence of conflicting cases from other Courts of Appeals made review of that issue by this Court and decision against the position of the [defendant] reasonably foreseeable."[11]

In 2009—almost four years before the conduct giving rise to the instant indictment—the Ninth Circuit decided *United States v. Juvenile Female*, 566 F.3d 943, 947 (9th Cir. 2009). In that case, after articulating the elements of assault with a dangerous weapon consistent with our definition above, the Ninth Circuit applied the categorical approach to conclude that "[a] defendant charged with . . . assault with . . . a dangerous weapon[] must have always 'threatened [the] use of physical force,' because he or she will have either made a 'wil[l]ful attempt to inflict injury' or a 'threat to inflict injury.'" *Id.* at 948 (fifth alteration in original) (first quoting 18 U.S.C. § 16(a); and then quoting *United States v. Chapman*, 528 F.3d 1215, 1219–20 (9th Cir. 2008)).

---

[11] The dissent relies on a law review article that advocates, as a normative matter, "for an alternative to the *Rodgers* rule." *See* Trevor W. Morrison, *Fair Warning and the Retroactive Judicial Expansion of Federal Criminal Statutes*, 74 S. Cal. L. Rev. 455, 460 (2001). The article is no doubt well-written and informative, but our task in this case is to apply the law as it has been announced by the Supreme Court, and as the article's author concedes, the law, as a descriptive matter, is "that an individual may rely on Supreme Court precedent declaring his condut to be outside the reach of a criminal statute, but may not rely on settled court of appeals precedent saying the same thing." *Id.*

The Ninth Circuit further rejected the argument we accepted in *Perez-Vargas*—that a criminal statute focusing on the resulting "bodily injury" did not categorically require physical force—reasoning that a defendant who committed an "assault resulting in bodily injury, necessarily must have committed an act of force in causing the injury." *Id.* This is the precise reasoning adopted by the Supreme Court five years later in *Castleman*. *See Castleman*, 572 U.S. at 170 ("It is impossible to cause bodily injury without applying force in the common-law sense."). And *Castleman*'s embrace of this logic led us to overrule *Perez-Vargas* in *Ontiveros*. *See Ontiveros*, 875 F.3d at 538 ("The [*Castleman*] Court specifically rejected the contention that 'one can cause bodily injury without the use of physical force—for example, by deceiving [the victim] into drinking a poisoned beverage, without making contact of any kind.'" (second alteration in original) (quoting *Castleman*, 572 U.S. at 170)).

Thus, the circuits were in disagreement as to whether "physical force" encompassed indirect force when Mr. Muskett committed his crime. And the Supreme Court's decision in *Castleman* resolved this conflict against the position we adopted in *Perez-Vargas* and *Rodriguez-Enriquez*, relying on its prior decision in *Curtis Johnson*—also issued before Mr. Muskett's crime. The incremental expansion of criminal liability at issue here, then, falls neatly within *Rodgers*. Consequently, as in *Rodgers*, "any argument . . . against retroactive application to [Mr. Muskett] of [the broader interpretation] . . . [is] unavailing since the existence of conflicting cases from other Courts of Appeals made review of that issue by th[e] Court and decision against the position of [Mr. Muskett] reasonably foreseeable." *See Rodgers*, 466 U.S. at 484.

21

The dissent takes issue with our premise that circuit disagreement existed at the time of Mr. Muskett's conduct. Instead, the dissent contends, there existed merely an "intra-circuit conflict" in the Ninth Circuit by virtue of two discordant opinions bearing on the direct-indirect force issue, neither of which possess precedential effect as a result of that court's anomalous rule that "the appropriate mechanism for resolving an irreconcilable conflict is an en banc decision."[12] *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1478–79 (9th Cir. 1987); *see* Dissent at 15–17. As a result, the dissent continues, at the time of Mr. Muskett's offense, the Ninth Circuit had no "binding precedent" on the question of whether "physical force" must be imparted directly to qualify under the elements clause. Dissent at 18.

---

[12] In *United States v. De La Fuente*, 353 F.3d 766, 771 (9th Cir. 2003), the defendant argued that mailing anthrax did not satisfy the elements clause at 18 U.S.C. § 16(a) because such conduct was not "forceful conduct, as the term 'force' ordinarily would be understood." The Ninth Circuit rejected that argument, explaining that "[a]nthrax is a physical substance that causes injury to the human body, and [the defendant's] letters clearly threatened death by way of physical contact with anthrax spores." *Id.*

Four years later, in *United States v. Beltran-Munguia*, 489 F.3d 1042, 1046 (9th Cir. 2007), the Ninth Circuit analyzed the minimum force required to commit an Oregon rape offense. The Ninth Circuit began its analysis by noting that the plain language of the Oregon statute did not contain an element of force: "Instead, the victim's lack of consent is the crime's defining characteristic." *Id.* at 1045. Given that feature, the court found multiple ways in which the crime could be committed without satisfying the elements clause: "a perpetrator could commit second-degree sexual abuse by surreptitiously adding to his victim's drink a drug that affects one's judgment, thereby rendering her 'mentally incapacitated'" and incapable of providing consent, or "the victim could be 'mentally defective,' yet fully physically cooperative." *Id.* at 1046.

Even if we agreed that the Ninth Circuit's decisions—involving different predicate crimes than the one at issue here—created an actual intra-circuit split such that neither those decisions nor *Juvenile Female* would be regarded as precedential in the Ninth Circuit, we would still find that *Juvenile Female* provided some notice to Mr. Muskett. The unambiguous holding in *Juvenile Female* answers the *precise* question presented by this appeal: "A defendant charged with . . . assault with . . . a dangerous weapon[] must have always 'threatened [the] use of physical force,' because he or she will have either made a 'wil[l]ful attempt to inflict injury' or a 'threat to inflict injury." 566 F.3d at 948 (fifth alteration in original) (first quoting 18 U.S.C. § 16(a); and then quoting *United States v. Chapman*, 528 F.3d 1215, 1219–20 (9th Cir. 2008)). That conclusion—indistinguishable from the categorical result we reach today—stood in direct opposition to what the dissent contends was the "unequivocal[]" law in this circuit at the time of Mr. Muskett's offense. Dissent at 2.

Thus, at the time of Mr. Muskett's conduct, the Ninth Circuit had found Mr. Muskett's crime to fall categorically within the elements clause definition of a crime of violence. By contrast, we had no direct precedent on this question, but an individual could arguably interpret our decisions in *Perez-Vargas* and *Rodriguez-Enriquez* (involving different predicate offenses but requiring that "physical force" be imparted directly) as mandating a conclusion contrary to the Ninth Circuit's. Even if Mr. Muskett had discovered the allegedly irreconcilable intra-circuit split regarding direct-indirect force in the Ninth Circuit—which apparently went entirely undetected by the lawyers who litigated, and the jurists who decided, *Juvenile Female*—someone seeking to commit

23

assault with a dangerous weapon without triggering additional criminal liability under § 924(c) would be wisely concerned by the prospect that the Supreme Court might ultimately side with the Ninth Circuit. And if that individual, as the dissent seems to suggest, was sophisticated enough to extrapolate the reasoning of *Perez-Vargas* and *Rodriguez-Enriquez* to his prospective commission of assault with a dangerous weapon, he was also savvy enough to discern that the Supreme Court, in *Curtis Johnson*, had flatly rejected the interpretation of "physical force" on which we had based our earlier conclusions, thereby endorsing the Ninth Circuit approach.

Ultimately, however, our rejection of Mr. Muskett's due process challenge does not depend solely on the result of a forensic examination of Ninth Circuit precedential development or whether that court would characterize any particular opinion as binding precedent. We do not hold that circuit disagreement alone provided Mr. Muskett with fair notice. The Constitution demands only that "the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267. We conclude it was reasonably clear that Mr. Muskett's conduct was criminal because at the time of his offense (1) the meaning of "physical force" remained unclear and therefore amenable to subsequent judicial interpretation; (2) the Court's opinion in *Curtis Johnson* rejected the interpretation of "physical force" on which we had relied in requiring direct physical force; and (3) the Ninth Circuit had unequivocally found that Mr. Muskett's predicate offense was categorically a crime of violence under the elements clause.

For all these reasons, it was reasonably foreseeable at the time Mr. Muskett brandished a firearm in furtherance of his commission of assault with a dangerous weapon that such conduct could trigger criminal liability under § 924(c)'s elements clause. As a result, the retroactive application of subsequent decisions so clarifying the force requirement does not deprive Mr. Muskett of his due process right to have fair notice of what the law proscribes.

## III.  CONCLUSION

Because Mr. Muskett's predicate offense of assault with a dangerous weapon categorically requires the attempted or threatened use of physical force, and further because Mr. Muskett had sufficient notice that brandishing a firearm in furtherance of that offense could run afoul of § 924(c), we affirm the district court's denial of his § 2255 motion.

*United States v. Donovan Muskett,* No. 17-2123
**BACHARACH**, J., dissenting.

We must ordinarily evaluate harmlessness under current law, *United States v. Lewis*, 904 F.3d 867, 872 (10th Cir. 2018), and our current law includes *United States v. Ontiveros*, 875 F.3d 533 (10th Cir. 2017). Under *Ontiveros*, Mr. Muskett's predicate offense (assault with a dangerous weapon) would constitute a crime of violence under 18 U.S.C. § 924(c)(3)(A). But when Mr. Muskett committed the predicate offense, our case law prohibited us from considering assault with a dangerous weapon as a crime of violence under 18 U.S.C. § 924(c)(3)(A). We toppled that case law in *Ontiveros*. Because Mr. Muskett couldn't have foreseen that change in our case law, retroactive application of *Ontiveros* would violate Mr. Muskett's right to due process. I thus respectfully dissent.

I.   **The right to due process prevents retroactive application of changes in the law without fair warning to the defendant.**

The Constitution prohibits Ex Post Facto laws, which stiffen the punishment beyond what the law provided when the crime was committed. U.S. Const. art. I § 9, cl. 3; *Peugh v. United States*, 569 U.S. 530, 532–33 (2013). Although this prohibition does not apply to the judiciary, the Fifth Amendment's right to due process does. This right entitles defendants to "fair warning . . . of what the law intends to do if a certain line is passed." *United States v. Lanier*, 520 U.S. 259, 265 (1997) (quoting *McBoyle v. United States*, 283 U.S. 25, 27 (1931)). Fair warning exists only if

defendants could reasonably foresee the legal consequences of their conduct. *Id.* at 270–71. To assess foreseeability, we consider whether a judicial decision was "unexpected and indefensible by reference to the law which had been expressed prior to the conduct." *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964) (quoting Jerome Hall, *General Principles of Criminal Law* 58–59 (2d ed. 1960)).

Certain types of judicial decisions may be considered "unexpected and indefensible." An example is a judicial decision that expansively interprets a narrow, precise statute. That decision could be unexpected and indefensible if the narrow statutory terms could have lulled potential defendants "into a false sense of security." *Id.* at 352. Judicial decisions can also be unexpected and indefensible when they overrule a precedent. *See Marks v. United States*, 430 U.S. 188, 195 (1977) (holding that a new Supreme Court opinion overturning a previous standard was unforeseeable); *Lopez v. McCotter*, 875 F.2d 273, 277–78 (10th Cir. 1989) (holding that a New Mexico court's decision to eliminate the bail bondsman's privilege was unforeseeable when the circumstances would not have foreshadowed a change in the law).

## II. We torpedoed our precedent after Mr. Muskett had committed his predicate offense.

When Mr. Muskett committed his offense in 2013, our precedent unequivocally prevented us from categorically treating assault with a

2

dangerous weapon as a crime of violence. *See United States v. Perez–Vargas*, 414 F.3d 1282, 1286–87 (10th Cir. 2005).

To categorically qualify as a crime of violence, an offense must include as an element the use, threatened use, or attempted use of physical force. 18 U.S.C. § 924(c)(3)(A). We considered a similar definition in *United States v. Perez–Vargas*, 414 F.3d 1282 (10th Cir. 2005). There we concluded that an offense constituted a crime of violence only if the conduct necessarily involved the direct use of physical force. 414 F.3d at 1286–87. We applied this conclusion to determine that Colorado's offense of third-degree assault wasn't a crime of violence, reasoning that the offense could be complete even if the force had only been indirect. *Id.* Based on this reasoning, we later held in *United States v. Rodriguez–Enriquez* that Colorado's offense of second-degree assault (drugging a victim) wasn't categorically classified as a crime of violence. 518 F.3d 1191, 1194–95 (10th Cir. 2008).

Unlike our court, the Supreme Court had not yet addressed whether a crime of violence needed to involve the direct use of physical force. But the Court had considered the definition of "physical force" in *Johnson v. United States*, addressing the meaning of the term "violent felony." 559 U.S. 133, 140 (2010). There the Court held that the physical force must be capable of causing physical pain or injury. *Id.*

3

After Mr. Muskett committed his offense, our governing precedents began to unravel, starting with *United States v. Castleman*, 572 U.S. 157 (2014). There the Supreme Court considered the definition of physical force in the context of misdemeanor crimes of domestic violence. In this context, the Court used the common-law definition of "physical force" rather than the narrower definition in *Johnson*. 572 U.S. at 163–65. Using the broader common-law definition, the Court concluded that intentionally or knowingly causing injury to a household member constituted a misdemeanor crime of domestic violence because this crime necessarily involved the use of common-law force. *Id.* at 169. But the Court expressly declined to decide whether the intentional or knowing causation of bodily injury necessarily involved the use of "physical force" as this term was defined in *Johnson*. *Id.* at 167.

Following *Castleman*, we recognized in *United States v. Ontiveros* that *Perez–Vargas* had been overruled. 875 F.3d 533, 536 (10th Cir. 2017). In *Ontiveros*, we considered whether Colorado's offense of second-degree assault was a crime of violence. 875 F.3d at 535–36. In deciding that issue, we held that *Perez–Vargas* was no longer good law. We noted that *Castleman* had concluded that a defendant's intentional or knowing causation of bodily injury necessarily involved common-law force. *Id.* at 536. Although *Castleman* hadn't decided whether intentional or knowing causation of bodily injury involved physical force under the *Johnson* test,

4

we relied in *Ontiveros* on the combination of reasoning in *Johnson* and *Castleman*. *Id*. at 538.

### III. Applying *Ontiveros* denies due process to Mr. Muskett because *Ontiveros* was unforeseeable when Mr. Muskett committed his offense.

Mr. Muskett argues that applying *Ontiveros* to his case would violate the right to due process because he couldn't have foreseen the subsequent sea change in our precedent when he committed his offense. I agree.[1]

The government contends that Mr. Muskett could have anticipated the change based on two circumstances:

1.      the Supreme Court's opinion in *Johnson* and

2.      the existence of a circuit split.

But neither circumstance made the change foreseeable.

---

[1]      The majority concludes that

- applying *Ontiveros* to Mr. Muskett's offense would not violate due process because the statute was ambiguous (unlike the narrow and precise statute at issue in *Bouie*) and

- judicial opinions had commented on the ambiguity.

Majority Op. at 16–17. But a judicial opinion expansively interpreting a narrow and precise statute is just one example of a potentially unforeseeable change in the law; another example is a court's decision to overrule its own precedent. *See* Part I, above.

5

The government points to the Supreme Court's opinion in *Johnson*, which preceded Mr. Muskett's offense. In the government's view, *Johnson* foreshadowed the eventual overruling of *Perez–Vargas*.[2]

Agreeing with the government, the majority relies on one sentence from *Johnson*, which stated that physical force is "force exerted by and through concrete bodies" rather than "intellectual force or emotional force." Majority Op. at 17 (quoting *Johnson v. United States*, 559 U.S. 133, 138 (2010)). The majority concludes that this sentence rejected our previous opinion, *United States v. Rodriguez–Enriquez*, where we had said that it "seems highly unlikely" that the adjective "physical" "is being used to distinguish the described force from a force generated by emotion, psychology, religion, or rhetoric." 518 F.3d 1191, 1194 (10th Cir. 2008).

According to the majority, the conflict between *Johnson* and *Rodriguez–Enriquez* should have alerted Mr. Muskett to the possibility that *Perez–Vargas* might eventually be overruled. Majority Op. at 18–19. But in the absence of 20–20 hindsight, no one in Mr. Muskett's position could have anticipated a possible overruling of *Perez–Vargas*.

---

[2] The government also argues that Mr. Muskett obtained fair warning under the residual clause. But the Supreme Court held that the residual clause was unconstitutionally vague, and vague laws don't provide fair warning. *United States v. Davis*, 139 S. Ct. 2319, 2325, 2336 (2019); *see also United States v. Lanier*, 520 U.S. 259, 266 (1997) (stating that the vagueness doctrine is a manifestation of the "fair warning requirement"). So the residual clause could not have provided Mr. Muskett with fair warning.

6

The majority elevates the importance of our "interpretation of the adjective 'physical' in *Rodriguez-Enriquez*." Majority Op. at 19. In my view, the cited language was immaterial to the holding in *Rodriguez-Enriquez*. There the question was whether Colorado's offense of second-degree assault necessarily involved physical force, as required for a crime of violence. *United States v. Rodriguez–Enriquez*, 518 F.3d 1191, 1194–95 (10th Cir. 2008). Because Colorado's offense of second-degree assault could consist of surreptitiously drugging a victim, the panel had to decide whether "physical force" could include chemical force (a type of indirect physical force). *Id*. So the panel didn't need to decide whether the adjective "physical" distinguished physical force from force through emotion, psychology, religion, or rhetoric. *Id*. at 1194.

In *Johnson*, too, the issue had nothing to do with whether the adjective "physical" distinguished physical force from force generated through emotion, psychology, religion, or rhetoric. 559 U.S. at 138–39. The issue there was whether "physical force" could consist of a slight touching, which would constitute physical force under the common-law definition. *Id*. at 139. So the Supreme Court had to decide between the common-law definition of "physical force" and a narrower meaning. *Id*. at 140.

The holdings in *Rodriguez–Enriquez* and *Johnson* didn't address whether the adjective "physical" would distinguish physical force from

7

force generated through emotion, psychology, religion, or rhetoric. So it's hard to imagine how even a sophisticated legal scholar could have predicted the overruling of *Rodriguez–Enriquez* from the single line in *Johnson*.

But let's assume, for the sake of argument, that Mr. Muskett should have interpreted *Johnson* to foreshadow the eventual rejection of a sentence in *Rodriguez–Enriquez* about the likely meaning of the adjective "physical." Even then, *Johnson* said nothing to suggest the overruling of *Perez–Vargas* or its holding that third-degree assault wasn't a crime of violence.

Indeed, *Johnson* might have given Mr. Muskett greater comfort that his offense was *not* categorically a crime of violence. *Johnson* had narrowly defined physical force, requiring that physical force be capable of causing physical pain or injury. *Johnson v. United States*, 559 U.S. 133, 140 (2010). Based on the Court's choice of this definition over the broader common-law definition, Mr. Muskett could have reasonably believed that the Supreme Court was narrowing the definition of physical force. In fact, the Supreme Court concluded in *Johnson* that an offense of simple battery didn't necessarily involve the use of physical force, so that offense wasn't a crime of violence. *Id*. at 145.

In the aftermath of *Johnson*, other courts didn't treat the opinion as a rejection of the distinction between direct and indirect uses of force. To

8

the contrary, courts continued to distinguish between the direct and indirect uses of force. *See United States v. Torres–Miguel*, 701 F.3d 165, 168–69 (4th Cir. 2012) (concluding that for a state offense to constitute a crime of violence, the offense must require the "*use* or *threatened use* of violent force" rather than "simply *result* in physical injury or death");[3] *United States v. Andino–Ortega*, 608 F.3d 305, 311 (5th Cir. 2010) (stating that Texas's offense of injury to a child could be committed "without the use of physical force by putting poison or another harmful substance in a child's food or drink");[4] *United States v. Castleman*, No. 2:08-cr-20420-JPM-cgc, 2010 WL 11519878, at *3 (W.D. Tenn. Apr. 30, 2010) (unpublished) (holding that offenses under Tennessee's domestic-assault statute did not constitute crimes of violence because the offenses could be committed by "deceiving [the victim] into drinking a poisoned beverage"). Given the continuing distinction between direct and indirect force, Mr. Muskett would have needed extraordinary prescience to foresee *Johnson*'s impact on *Perez–Vargas*. *See Devine v. N.M. Dep't of Corr.*, 866 F.2d 339, 345 (10th Cir. 1989) (concluding that a judicial decision was unforeseeable

---

[3]    The Fourth Circuit later recognized that *Torres–Miguel* had been abrogated by *Castleman*. *United States v. Allred*, 942 F.3d 641, 653 (4th Cir. 2019).

[4]    The Fifth Circuit overruled this part of the opinion after the Supreme Court's decision in *Castleman*. *United States v. Reyes–Contreras*, 910 F.3d 169, 182 n.27 (5th Cir. 2018) (en banc).

9

when "[e]ven an in-depth inquiry by a dedicated and educated student of . . . law would have revealed nothing to foreshadow the . . . opinion").

Even after *Castleman*, *Johnson*'s impact on our opinion in *Perez–Vargas* was not entirely clear. *Castleman* concluded that indirect assaults, such as poisoning a victim, would involve physical force. *See* Part II, above. But *Castleman* reached this conclusion by relying heavily on the common-law definition of physical force. *See United States v. Castleman*, 572 U.S. 157, 170 (2014) (explaining that "the common-law concept of 'force' encompasses even its indirect application"); *see also* Part II, above. And *Castleman* expressly refrained from deciding whether indirect assaults would meet *Johnson*'s elevated standard for physical force. 572 U.S. at 167. By refraining from a decision on this issue, the *Castleman* Court declined to say whether *Johnson*'s requirement of physical force could be satisfied when the force is indirect. And, of course, Mr. Muskett had committed his offense before the Supreme Court decided *Castleman*. So Mr. Muskett would have needed uncanny legal expertise and foresight to anticipate the eventual unravelling of *Perez–Vargas* based on the Supreme Court's opinion in *Johnson*.

The government also argues that *Ontiveros* was foreseeable based on a supposed circuit split at the time of Mr. Muskett's offense. The majority agrees, holding that any circuit split on the scope of a criminal statute would provide notice that the court might broaden its interpretation of

10

crimes of violence. Majority Op. at 19-20. I respectfully disagree for two reasons:

1.  The existence of a circuit split wouldn't have provided fair warning because our precedent in 2013 had clearly prevented categorical treatment of Mr. Muskett's offense as a crime of violence.

2.  No circuit split existed in 2013.

In holding that a circuit split can provide fair warning, the majority relies on an isolated sentence from a 1984 Supreme Court opinion, *United States v. Rodgers*, 466 U.S. 475 (1984). In *Rodgers*, the Supreme Court overruled an Eighth Circuit opinion that would have prevented criminal liability, choosing instead to adopt a broader construction. 466 U.S. at 478–79. In a single sentence, the Court commented: "[A]ny argument by respondent against retroactive application to him of our present decision . . . would be unavailing since the existence of conflicting cases from other Courts of Appeals made review of that issue by this Court and decision against the position of the respondent reasonably foreseeable." *Id*. at 484.

The majority interprets this sentence to mean that a circuit split always provides fair warning. But this interpretation disregards the context. *Rodgers* didn't even mention the right to due process or the fair-warning test, and the Supreme Court has never cited *Rodgers* for a holding on due process.

11

To the contrary, the Supreme Court later clarified that a circuit split is simply one consideration bearing on the existence of fair warning and is not dispositive on its own. *See United States v. Lanier*, 520 U.S. 259, 269 (1997) (explaining that "disparate decisions in various Circuits might leave the law insufficiently certain . . . [but] such a circumstance may be taken into account in deciding whether the warning is fair enough"). And the Supreme Court has noted that a defendant need not stay apprised of legal developments in other jurisdictions. *See Rogers v. Tennessee*, 532 U.S. 451, 464 (2001) ("Due process, of course, does not require a person to apprise himself of the common law of all 50 States in order to guarantee that his actions will not subject him to punishment in light of a developing trend in the law that has not yet made its way to his State."). If Mr. Muskett didn't need to stay apprised of developments in other jurisdictions, why couldn't he rely with confidence on our precedential opinion in *Perez–Vargas*?

After all, even when the conduct involves only civil liability, the defendant can rely on our precedent irrespective of contrary case law in other jurisdictions. *See* Trevor W. Morrison, *Fair Warning and the Retroactive Judicial Expansion of Federal Criminal Statutes*, 74 S. Cal. L. Rev. 455, 487 (2001) ("[N]either the Supreme Court nor any federal court of appeals has ever held that liability may attach where settled in-circuit

12

precedent clearly holds the conduct in question to be lawful.").[5] Although a circuit split could spur Supreme Court review, no court has ever questioned the ability of defendants to rely on their own in-circuit precedent. *See id.* at 488 ("[I]t seems clear that in cases where in-circuit precedent squarely *supports* the defendant by holding his conduct to be lawful, the defendant will always enjoy immunity without regard to the law in other circuits.").

If a public official can't incur civil liability despite the possibility that the Supreme Court could overrule our precedent, how could a court subject a criminal defendant to harsher punishment based on changes in the law after he'd already committed his crime? "If the defendant's reasonable belief that his conduct was lawful is adequate to immunize him from civil suit, it would be anomalous at best nevertheless to subject him to criminal prosecution for the same conduct." Seth P. Waxman & Trevor W. Morrison, *What Kind of Immunity? Federal Officers, State Criminal Law, and the Supremacy Clause*, 112 Yale L.J. 2195, 2213 (2003).

---

[5] The majority questions my reliance on Dean Morrison's article because our task is to apply governing law rather than opine on what the governing law should be. Majority Op. at 20 n.11. I too am focusing on what the law is, not what it should be. In my view, the *existing* law does not incongruously permit criminal liability for acting legally under circuit precedent when conformity to circuit precedent couldn't even trigger civil liability. *See United States v. Lanier*, 520 U.S. 259, 270–71 (1997); *see* p. 14, below.

Recognizing this potential anomaly, the Supreme Court has highlighted the similarity in the tests for civil and criminal liability:

> In the civil sphere, we have explained that qualified immunity seeks to ensure that defendants "reasonably can anticipate when their conduct may give rise to liability," by attaching liability only if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." So conceived, the object of the "clearly established" immunity standard is not different from that of "fair warning" . . . . The fact that one has a civil and the other a criminal law role is of no significance; both serve the same objective, and in effect the qualified immunity test is simply the adaptation of the fair warning standard to give officials (and, ultimately, governments) the same protection from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes. To require something clearer than "clearly established" would, then, call for something beyond "fair warning."

*United States v. Lanier*, 520 U.S. 259, 270–71 (1997) (citations omitted).

Given the similarity in the tests for civil and criminal liability, the Supreme Court has recognized the central role of our precedent in guiding the behavior of not only civil defendants but also criminal defendants. For example, in *Marks v. United States*, the Court held that the right to due process prevents retroactive application of a new Supreme Court opinion that departs significantly from a prior Supreme Court pronouncement. 430 U.S. 188, 194–97 (1977).

*Marks* addressed retroactive application of a case that had overruled an opinion by the Supreme Court rather than our court. *Id.* But we have interpreted *Marks* more broadly, stating that "*Marks* held that a court

14

overruling its own precedent is unforeseeable for due process purposes." *Devine v. N.M. Dep't of Corr.*, 866 F.2d 339, 345 (10th Cir. 1989). Based on this interpretation of *Marks*, we have held that the right to due process prohibited retroactive application of a state-court decision issued after the defendant had committed his crime. *Lopez v. McCotter*, 875 F.2d 273, 277–78 (10th Cir. 1989).

This holding prevents retroactive application here, for "the existence of settled in-circuit precedent holding a defendant's conduct to be lawful would appear to mean it was not 'reasonably clear' that his conduct was *unlawful* when undertaken." Trevor W. Morrison, *Fair Warning and the Retroactive Judicial Expansion of Federal Criminal Statutes*, 74 S. Cal. L. Rev. 455, 457 (2001). So the existence of settled in-circuit precedent prevented fair warning to Mr. Muskett from the eventual thrashing of our precedent.

But even if Mr. Muskett could have obtained fair warning from a circuit split, none existed in 2013. Three other circuits had held, as we had, that crimes of violence required the direct use of physical force. *See Chrzanoski v. Ashcroft*, 327 F.3d 188, 195–96 (2d Cir. 2003); *United States v. Torres–Miguel*, 701 F.3d 165, 168–69 (4th Cir. 2012); *United States v. Villegas–Hernandez*, 468 F.3d 874, 879 (5th Cir. 2006).

15

The government contends that the Ninth Circuit had created a circuit split prior to 2013. I disagree. The Ninth Circuit's opinions contradicted each other, offering no binding precedent that could create a circuit split.

In 2003, the Ninth Circuit held that mailing anthrax was a crime of violence. *United States v. De La Fuente*, 353 F.3d 766, 771 (9th Cir. 2003). Rejecting the defendant's suggestion that mailing anthrax did not involve the use of physical force, the court explained that "[a]nthrax is a physical substance that causes injury to the human body, and [the defendant's] letters clearly threatened death by way of physical contact with anthrax spores." *Id.*

But roughly four years later, the Ninth Circuit concluded that a crime of violence hadn't taken place because offenders could commit second-degree sexual abuse without directly using any physical force. *United States v. Beltran–Munguia*, 489 F.3d 1042, 1046 (9th Cir. 2007). For example, a perpetrator could commit the offense by surreptitiously drugging the victim, rendering her unable to consent. *Id.* This conclusion contradicted the court's earlier conclusion on whether chemical force could constitute physical force. *Compare De La Fuente*, 353 F.3d at 771 (holding that poisoning a victim was a crime of violence), *with Beltran–Munguia*, 489 F.3d at 1046 (holding that drugging a victim was not a crime of violence).

About two years later, the Ninth Circuit decided *United States v. Juvenile Female*, holding that assault involving a deadly or dangerous weapon or resulting in bodily injury was a crime of violence. 566 F.3d 943, 947 (9th Cir. 2009). According to the majority, *Juvenile Female* "rejected the argument we accepted in *Perez-Vargas*." Majority Op. at 21. I respectfully disagree. Unlike *Perez-Vargas*, *Juvenile Female* never discusses whether crimes of violence require the direct use of force.[6] In the absence of any discussion, the Ninth Circuit's internal division remained. *See United States v. Corrales–Vazquez*, 931 F.3d 944, 954 (9th Cir. 2019) ("[C]ases are not precedential for propositions not considered or for questions which merely lurk in the record." (internal quotation marks and citations omitted)).

The Ninth Circuit thus had an intra-circuit conflict. Under Ninth Circuit precedent, an intra-circuit conflict can be resolved only through an en banc proceeding. *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1478–79 (9th Cir. 1987) (en banc). Until the court convenes en banc, however, the law in the Ninth Circuit remains unsettled:

---

[6]     In *Juvenile Female*, neither party argued that crimes of violence require the direct use of force. *See* Br. for Appellant, *United States v. Juvenile Female*, 566 F.3d 943 (9th Cir. 2009) (No. 07-50549); Br. for Appellee, *United States v. Juvenile Female*, 566 F.3d 943 (9th Cir. 2009) (No. 07-50549). It is thus unsurprising that the court did not address this issue. *See United States v. Sainz*, 933 F.3d 1080, 1087 (9th Cir. 2019) (explaining that courts "normally decide only questions presented by the parties") (quoting *Greenlaw v. United States*, 554 U.S. 237, 244 (2008)).

17

> An intra-circuit conflict can only be resolved by the court en banc. Until the en banc court is able to address the issue, we must make the unsatisfactory choice between two opposing lines of authority, neither of which has an unimpaired claim to being the law of the circuit.

*Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 636 (9th Cir. 1988) (citations omitted), *overruled in part on other grounds by United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir. 1992) (en banc) (per curiam).[7] So the Ninth Circuit had no binding precedent conflicting with *Perez–Vargas* when Mr. Muskett committed his offense.

\* \* \*

In summary, neither a circuit split nor the Supreme Court's opinion in *Johnson* provided fair warning to Mr. Muskett that his prior offense could constitute a crime of violence. So applying *Ontiveros* would violate Mr. Muskett's right to due process.

## IV. Conclusion

Based on our governing precedent at the time of the predicate offense (*Perez–Vargas*), we cannot retroactively apply *Ontiveros* without violating Mr. Muskett's right to due process. I would thus apply *Perez–Vargas*.

---

[7] The Ninth Circuit's rule here differs from most circuits' rules, which require adherence to the earlier opinion in an intra-circuit conflict. *See McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (collecting cases from circuits that require adherence to the earlier of two conflicting panel opinions).

18

Under *Perez–Vargas*, Mr. Muskett's offense of assault with a dangerous weapon is not a crime of violence.