**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 22, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DUSTIN KYLE MARRIS,

    Defendant - Appellant.

No. 23-7011
(D.C. No. 6:20-CR-00138-RAW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **KELLY**, and **LUCERO**, Circuit Judges.
_____

A jury convicted Dustin Kyle Marris, an Indian, of (1) assault with a dangerous weapon with intent to do bodily harm in Indian country in violation of 18 U.S.C. §§ 113(a)(3), 1151, and 1153, and (2) use of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii).  Marris contends

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

that the evidence was insufficient to sustain the convictions.[1]  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I

Given that this case presents a sufficiency of the evidence challenge, a slightly more extensive recitation of the evidence is warranted.  At trial the jury was presented with the following evidence:  On the evening of November 9, 2020, Okmulgee Police Department Deputy Bailey Smalley was patrolling an area near Henryetta, Oklahoma—a well-known area of illegal drug activity.  She observed a vehicle sitting at a stop sign for an unusually long time, which raised a red flag.  Deputy Smalley decided to follow the vehicle.

When Deputy Smalley realized that the vehicle was travelling more than thirty miles above the speed limit, she activated her emergency lights and tried to initiate a traffic stop; but instead of stopping, the vehicle ran a stop sign and continued speeding.  She activated her siren and continued to pursue the vehicle, which reached speeds of more than 100 miles-per-hour.  Although Deputy Smalley could not see who was driving the vehicle, she saw what appeared to be a handgun thrust out of a window on the driver's side of the vehicle.  Immediately thereafter, she saw three muzzle flashes and heard three gunshots.  The light from the muzzle flashes allowed

---

[1] The jury also convicted Marris of possessing methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He does not challenge these convictions.  Marris was acquitted of assault with intent to commit murder in violation of 18 U.S.C. §§ 113(a)(1), 1151, and 1153.

Deputy Smalley to see that (1) there was a handgun sticking out of the vehicle's window, (2) the gun was pointed at her patrol car, and (3) the muzzle flashes were also aimed in her direction. After the shots were fired, she created some distance between her patrol car and the vehicle.

Deputy Smalley immediately notified dispatch that shots had been fired. Shortly thereafter, she saw the vehicle crash into a ditch. When she pulled up to the scene of the crash, the driver's door was open, and the driver had fled. She approached the vehicle, which contained two female passengers later identified as Kolepah Berryhill, who was sitting in the front passenger seat, and her sixteen-year-old daughter, J.B., who was sitting in the back behind the driver's seat.

During a search of the area, Deputy Smalley located a black semiautomatic handgun in the tall grass near the front driver's side tire. Other law enforcement personnel who arrived on the scene searched the vehicle and found a glass smoking pipe and two baggies containing what was later determined to be methamphetamine. The following day, Marris was apprehended at a nearby property. During a search of his person, law enforcement uncovered four baggies of methamphetamine in his front pockets. Marris was arrested and taken into custody.

After waiving his *Miranda* rights,[2] Marris consented to an interview with law enforcement, portions of which were played for the jury during the government's case-in-chief. He said that he knew the police were looking for him when he fled the

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

scene, but he did not know why, and explained that he ran because he knew the vehicle could be traced back to his mother.  Although Marris admitted that he was in possession of the weapon found by Deputy Smalley near the vehicle, he denied shooting at anyone or hearing any gunshots at all.  According to Marris, the last time he saw the gun it was on the floorboard of the vehicle between the seat and center console.  The government also presented portions of recorded jail-house telephone conversations between Marris and his girlfriend, in which he spoke about the incident.

J.B. testified as a witness for the government.  She told the jury that Marris picked her and her mother up the night of the incident and agreed to drive them to Walmart.[3]  J.B. sat behind Marris, who was sitting in the driver's seat, and her mother sat in the front passenger seat.  She explained that Marris started driving very fast when the police car turned on its lights.  J.B. testified that she started to cry and buckled her seat belt.  According to J.B., the front driver's side window was open, and she heard gunshots coming from outside the driver's side of the vehicle.  At this point, J.B. said that she and her mother kept their eyes trained on each other.  J.B. also told the jury that when she heard the gunshots, she looked up and saw Marris turning back around in the driver's seat and "readjusting himself."  R., Vol. III at 99. After the vehicle crashed in the ditch, Marris fled across the road, leaving J.B. and

---

[3] Marris and Berryhill, who had a history of drug addition, were friends.  The government tried to subpoena Berryhill for trial but could not locate her.

her mother inside the vehicle.  J.B. further testified that she did not see her mother throw a weapon out of the vehicle after the chase.

An area resident testified that he was watching television on the night of the incident and heard police sirens followed by four gunshots.  He looked out the window and saw a police car pursuing another vehicle, which he estimated was 200 to 400 yards behind the vehicle being chased.

Oklahoma State Bureau of Investigation Special Agent Travis Smiddy testified as an expert witness.  He opined that damage to the rear driver's side of the vehicle was consistent with a bullet ricocheting off the vehicle.  Although Agent Smiddy was unable to determine the distance between the bullet's point of origin and the damage, he testified that the damage was consistent with someone leaning out of the driver's side window and firing a gun towards the rear of the car at a slight downward angle.

Last, Okmulgee County Sheriff's Office Lieutenant Duston Todd testified that the vehicle was tested for gunshot residue several weeks after the incident. Specifically, he tested the door, seat, and ceiling of the driver's side front door and the same areas in the passenger's side front door.  None of those areas tested positive for gunshot residue; however, Lieutenant Todd conceded that he did not test the steering wheel or gear shift, even though it would have been difficult for Mr. Marris to drive the vehicle without touching those areas.

Marris did not testify or otherwise put on a case.  The district court denied Mr. Marris' motions for judgment of acquittal.

## II

"We review the sufficiency of the evidence and the district court's denial of a motion for judgment of acquittal de novo." *United States v. Xiang*, 12 F.4th 1176, 1184 (10th Cir. 2021). "We take the evidence—both direct and circumstantial, and reasonable inferences drawn from that evidence—in the light most favorable to the government and ask only whether a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013) (brackets, ellipsis, and internal quotation marks omitted).  In doing so, "we do not weigh the evidence or consider the relative credibility of witnesses." *Xiang*, 12 F.4th at 1184.

"The evidence, together with the reasonable inferences to be drawn therefrom, must be substantial, but it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *Rufai*, 732 F.3d at 1188 (brackets and internal quotation marks omitted).  This "highly deferential" standard of review results in reversal "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Xiang*, 12 F.4th at 1184 (internal quotation marks omitted). "Nevertheless, we will not uphold a conviction that was obtained by nothing more than piling inference upon inference or where the evidence raises no more than a mere suspicion of guilt." *Rufai*, 732 F.3d at 1188 (brackets, ellipses, and internal quotation marks omitted).

To sustain the crime of assault with a dangerous weapon with intent to do bodily harm under 18 U.S.C. § 113(a)(3), the government had to prove beyond a

reasonable doubt that Marris either willfully attempted to inflict injury upon Deputy Smalley with the intent to do bodily harm or threatened to inflict injury on Deputy Smalley with the intent and apparent ability to inflict bodily harm, which caused a reasonable apprehension of immediate bodily harm. *See United States v. Muskett*, 970 F.3d 1233, 1241 (10th Cir. 2020).[4]  Further, assault with a dangerous weapon is categorically a crime of violence under 18 U.S.C. § 924(c). *See* 18 U.S.C. § 924(c)(3)(A); *Muskett*, 970 F.3d at 1241-42.  Given our conclusion in Part III that Marris was properly convicted of assault with a dangerous weapon, it necessarily follows that the evidence supported his conviction for using a firearm in connection with a crime of violence. *See* 18 U.S.C. § 924(c)(3)(A); *Muskett*, 970 F.3d at 1241-42.

### III

On appeal, Marris argues that the evidence was insufficient to prove that he was the shooter or that the shooter intended to harm Deputy Smalley. *See* Aplt. Opening Br. at 8.  Specifically, Marris suggests that the evidence pointed to either J.B. or Berryhill as the shooter and "[w]hoever fired the gun was merely attempting to scare Deputy Smalley into ending the pursuit." *Id*. at 18.  As support, he argues that (1)  Berryhill had a motive to shoot at Deputy Smalley because she was afraid of losing custody of her daughter if she was arrested for drug possession, (2) as a front-seat passenger, Berryhill had access to the firearm, (3) J.B. was not credible

---

[4] The parties stipulated that Marris is an Indian and the incident took place within Indian country.

because she was kicked out of her grandmother's house for bad behavior, (4) there was no gunshot residue found in the driver's or passenger's side front doors, (5) there was no gunshot-residue testing in the driver's side rear passenger door where J.B., the other possible shooter, was seated, (6) the trajectory of the bullet that damaged the rear side of the vehicle suggested the firearm could have been fired from the rear driver's side window, and (7) the downward angle of the bullet that ricocheted off the vehicle demonstrated there was no intent to shoot at Deputy Smalley.

Our review of the direct and circumstantial evidence and the reasonable inferences drawn from that evidence—viewed in the light most favorable to the government—convinces us that the evidence was sufficient for the jury to find that Marris was the shooter. First, during his interview Marris admitted that (1) he owned the gun found at the scene, (2) he kept the weapon on the floorboard near the center console, and (3) he knew how to operate the weapon and kept a stash of bullets handy. By contrast, there was no evidence that either J.B. or Berryhill knew where the weapon was located or how to operate it. Second, Deputy Smalley testified that she saw a handgun thrust out of a window on the driver's side of the vehicle and heard gunshots coming from outside the driver's side. Further, J.B. testified that the front driver's side window was open during the chase, and she heard gunshots coming from outside the driver's side of the vehicle. Third, the evidence indicated that one of the bullets ricocheted off the left rear driver's side of the vehicle. Fourth, the sound of gunshots caused J.B. to look up in time to see Marris turn around in the driver's seat and readjust himself. Fifth, even though Marris said that he did not hear

8

any gunshots, both Deputy Smalley and a nearby resident testified to hearing three to four shots being fired. Sixth, Marris conceded at trial that he was a convicted felon in possession of a firearm who fled the scene, which in turn permitted the jury to infer that his flight was evidence of guilt. Seventh, we cannot second-guess the jury by reweighing the evidence or considering the relative credibility of witnesses.

Again, our review of the direct and circumstantial evidence and the reasonable inferences drawn from that evidence—viewed in the light most favorable to the government—convinces us that there was ample evidence from which the jury could find that Marris acted with the necessary intent. Although Deputy Smalley did not see who fired the shots, she testified that she was close enough to the vehicle to see the shooter thrust the gun out the window, aim it at her patrol car, and fire three times before she backed off. According to Deputy Smalley, she was terrified, which was confirmed by her shaking voice when she called dispatch. Further, the evidence was that the bullets could have covered the distance between the vehicle and patrol car, regardless of the bullet's trajectory. Finally, in a recorded jail-house conversation with his girlfriend, Marris admitted that he wanted to shoot Deputy Smalley, although he denied pulling the trigger.

**IV**

The evidence, construed in the light most favorable to the government, supports the jury's conclusion that Marris was guilty of assault with a dangerous weapon with intent to do bodily harm and use of a firearm in relation to a crime of violence.  We affirm the district court's denial of Marris' motions for judgment of acquittal.

Entered for the Court

Carlos F. Lucero
Circuit Judge